**Jose E. PANZARDI-ALVAREZ,**
**Petitioner, Appellant,**

v.

**UNITED STATES of America,**
**Respondent, Appellee.**

**No. 88–1406.**

United States Court of Appeals,
First Circuit.

Heard Feb. 6, 1989.
Decided July 19, 1989.

Charles G. White for petitioner, appellant.

Juan A. Pedrosa, Asst. U.S. Atty., Crim. Div., Guaynabo, P.R., with whom Daniel F. López–Romo, U.S. Atty., Hato Rey, P.R., was on brief, for the U.S.

Before BREYER and TORRUELLA, Circuit Judges, and CAFFREY,* Senior District Judge.

TORRUELLA, Circuit Judge.

José Panzardi Alvarez ("Panzardi") appeals the denial of his petition under 28 U.S.C. § 2255 to vacate his conviction, as well as his motion under Fed.R.Crim.P. 35 to reduce sentence. Although this court, as well as the lower courts, has already published several opinions in this and other related cases, we will nevertheless fully recite the relevant facts, as an understanding of the procedural history of this case is essential to a determination of the issues now before us.

## I. *Background*

This case began when Panzardi, along with five others, was indicted in connection with the brutal murder of a government informant, who was to be a witness against Panzardi in two drug-related cases that were pending. He was charged with: 1) deprivation of the informant's civil rights, which resulted in the informant's death, in violation of 18 U.S.C. § 241 ("Count I"); 2) aiding and abetting with intent to retaliate, in violation of 18 U.S.C. §§ 1513 and 2 ("Count II"); and 3) aiding and abetting the unlawful use of firearms, in violation of 18 U.S.C. § 924(c) ("Count III").

Panzardi desired to be represented in this case by Charles G. White ("White"), an attorney admitted to practice in Florida and who is not a member of the Federal Bar for the District of Puerto Rico. White was already representing Panzardi *pro hac vice* in one of the two pending drug cases. White's motion to be admitted *pro hac vice* to represent Panzardi in the murder case was denied for two independent reasons: White did not obtain local counsel in violation of Local Rule 204.2 and also because one section of the rule, at that time, limited appearances to one case per year.[1] *See United States v. Panzardi–Alvarez*, 623 F.Supp. 108 (D.P.R.1985) (analyzing the constitutionality of the one case per year rule before this court's decision in *United States v. Panzardi–Alvarez*, 816 F.2d 813 (1st Cir.1987) (holding the one case per year rule to be unconstitutional)).

After refusing to work with a court appointed attorney, Panzardi retained Peter John Porrata ("Porrata"), an attorney in Puerto Rico, to represent him. Nevertheless, White again moved, on January 21, 1986 for admission *pro hac vice*. He had properly designated local counsel and felt that Local Rule 204.2 was not violated because a new calendar year had begun. The district court denied the application because it interpreted the rule to limit appearances to one case during each twelve month period, rather than calendar year.

---

* Of the District of Massachusetts, sitting by designation.

1. Local Rule 204.2 states:
Other Attorneys (Pro hac vice) Any member in good standing of the Bar of any United States Court, or of the highest court of any state, territory or possession of the United States who has been retained to appear in this Court, and who is not a resident of Puerto Rico, or does not maintain an office in the Commonwealth of Puerto Rico for the practice of law, may be permitted to appear and participate in a particular case in association with a member of the Bar of this Court. Such applicant shall designate the member of the Bar of this Court, who must have an office for the practice of law at a place within the Commonwealth of Puerto Rico, and also in said application the address, telephone number and written consent of said designee. Furthermore, the application must state in the motion his/her experience in federal litigation and knowledge of the local rules of this Court. The Court, in writing or otherwise, may find the person meets the standards for practice in this Court.

*United States v. Panzardi–Alvarez,* 628 F.Supp. 667 (D.P.R.1986). The court also implied that other considerations concerning the ethics of White's behavior before the court would prevent the judge, in his discretion, from allowing White's requested admission. *Id.* at 668.

Porrata continued as Panzardi's counsel, through the time when Panzardi changed his plea and pleaded guilty after a thorough Rule 11 hearing. Panzardi pleaded guilty to Count I and agreed to cooperate fully with the authorities about other ongoing investigations. In exchange for his change of plea, the government agreed to drop the other two counts, to recommend that Panzardi's sentence on Count I run concurrently with any sentences that he received in other cases, and to inform the court of the extent of Panzardi's cooperation. Panzardi's agreement included a clause stating that the terms of the agreement were not binding upon the sentencing judge and that the government would make no sentencing recommendation. Panzardi was sentenced to be incarcerated for 99 years.

After sentencing, Panzardi continued cooperating with government investigations and prosecutions. Approximately three months after sentencing, Panzardi filed a motion to reduce sentence, pursuant to Federal Rule of Criminal Procedure 35(b), which was denied. He then moved *pro se* for reconsideration of the denial of this motion. Before a hearing on this motion, Panzardi moved again for White's *pro hac vice* admission, relying on the then recent opinion by this court holding that the one case per year rule was invalid. *See United States v. Panzardi–Alvarez,* 816 F.2d 813 (1st Cir.1987) (holding that denying defendant's request to be represented by outside counsel because of one case per year rule violated defendant's Sixth Amendment right to counsel of one's choice). Nevertheless, the district court, in its discretion, again denied the motion, finding that White had committed a number of ethical violations that should prevent him from appearing before the court.

The court focused primarily on two incidents. First, before Panzardi had changed his plea, another attorney from Florida, Paul McKenna, had filed a motion to appear *pro hac vice* in order to represent Gloria Nieves–Báez, one of Panzardi's codefendants, as well as his girlfriend of many years. McKenna had offices in the same building as White, although the two attorneys did not formally share a practice. When McKenna's motion was denied because he had not designated local counsel, McKenna, with the cooperation and support of White, filed a petition with the court under 18 U.S.C. §§ 2241 and 2255. The two attorneys apparently waited for a ruling outside of the judge's courtroom. Although the details of their actions outside of the judge's chambers are not completely clear from the record, their conduct was considered harassing by the judge, who felt forced to call a United States Marshal to remove them from the premises.

White eventually helped Panzardi procure representation for Nieves–Báez by John F. O'Donnell ("O'Donnell"), another Florida attorney, recommended to White by McKenna and who would be working with the assistance of local counsel. Panzardi paid for the services of these attorneys and on occasion, White would collect payments from Panzardi and deliver them to O'Donnell. The district court was not informed by the parties or their counsel as to this arrangement. Rather, this information was made known only when Nieves–Báez approached the judge below, stating that she wanted to cooperate with the government but was afraid to speak freely with her attorney because of his ties to Panzardi. The court below held a conflict of interest hearing but, due to the prior violent killing of a government witness in this case and thus the possible danger to the safety of Nieves–Báez, initially ordered the record of this hearing to be sealed. Because of the evidence presented at this hearing of an apparent "joint representation scheme," *United States v. Panzardi–Alvarez,* 678 F.Supp. 353 at 358 (D.P.R. 1988), as well as the scene that had occurred outside of the judge's courtroom,

the judge below denied White's application for admission.

White's last application for *pro hac vice* admission was filed in order to enable White to represent Panzardi in his § 2255 motion. This motion was denied, although White apparently prepared all of Panzardi's § 2255 filings nevertheless.

Panzardi's § 2255 motion to vacate his conviction was based primarily on three claims: 1) ineffective assistance of counsel because he had been refused the counsel of his choice; 2) ineffective assistance of counsel because of Porrata's decision to allow Panzardi to remain incarcerated in New York until shortly before his trial and also because of the alleged inadequate representation provided by Porrata; and 3) the violation of his plea agreement because the sentencing judge allegedly had not considered the full extent of Panzardi's cooperation with the authorities before making the final sentencing decision. Along with these matters, Panzardi moved for the judge below to recuse himself, claiming that the judge's repeated refusals of White's *pro hac vice* applications, as well as the judge's characterization of White's behavior as unprofessional, evidenced a lack of impartiality. These motions were denied, without a hearing, as was Panzardi's motion to reconsider the denial of the motion to reduce sentence. It is from these denials that Panzardi now appeals.

## II. *Denial of Panzardi's Counsel of Choice*

■ Panzardi argues that his sixth amendment rights were violated when he was denied his right to be represented by White, his counsel of choice. He claims that the lower court's denials of White's applications for *pro hac vice* admission were erroneous, with no legitimate grounds upon which to base the decisions. First, although White had not designated local counsel, Panzardi argues that this action was justified because his local counsel was disqualified at the last moment and there remained too little time for White to find substitute counsel. White had not found a replacement at the time that he filed his motion, but he had indicated that he would find suitable local counsel by the time he made his first appearance. Nevertheless, the record is clear that White failed to designate local counsel as is required by Rule 204.2. Although a very technical adherence to the rule, the district judge was clearly justified in requiring compliance. White needed just to obtain local counsel and then was able to refile.

Second, Panzardi argues that the district judge erred in relying upon the one case per year rule, which was later declared unconstitutional. Because courts of appeals will not entertain interlocutory appeals on issues of this sort, *see Flanagan v. United States*, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984) (holding that violations of a criminal defendant's right to counsel of choice can be fully reviewed following a final judgment of conviction), Panzardi was unable to appeal the lower court's denial of White's application. Therefore, Panzardi was forced to accept the services of Porrata and this arrangement should not be considered a waiver of his rights. Prejudice need not now be shown, he argues, because a violation of one's right to choose counsel is a *per se* Sixth Amendment violation as evidenced by the *Flanagan* rationale.

Panzardi also puts forth another argument that is essential to his claim: that the district judge's determination that White had violated ethical canons, and therefore should be denied *pro hac vice* admission, was an abuse of his discretion.[2] Basically, Panzardi claims that there was no misconduct or conflict of interest in the procurement and retention of O'Donnell by White.

---

2. We note with disapproval the tone and language throughout appellant's brief, attacking the actions and integrity of the court below. Although we recognize and respect the importance of zealous advocacy, especially in criminal cases, there is an important, albeit hazy, line between effective advocacy and improper behavior. Both the Model Code of Professional Responsibility and the Model Rules of Professional Conduct forbid attorneys from discourteous conduct or other affronts upon the dignity of the court. *See* DR 7–106(C)(6); Comment of Rule 3.5. Vigorous advocacy does not necessitate belligerence towards the court.

Moreover, even if there was a conflict of interest, White was entitled to attend the conflict of interest hearing so that he could defend his actions and better inform the court as to the true circumstances underlying his actions. Alternatively, nothing from this conference should have been used to determine the impropriety of White's actions.

The Sixth Amendment right to effective assistance of counsel encompasses the corollary, qualified right of defendants to be represented by counsel of their choice. *United States v. Diozzi*, 807 F.2d 10, 12 (1st Cir.1986). Thus, a decision denying a *pro hac vice* admission necessarily implicates constitutional concerns. *Panzardi*, 816 F.2d at 816. The general rule, therefore, must be that " 'when an accused is financially able to retain an attorney, the choice of counsel to assist him rests ultimately in his hands and not in the hands of the State.' " *Id.* (quoting *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir.1985)).

This right, however, is not absolute. We have consistently recognized that the right to one's counsel of choice will be limited "when insistence upon it would disproportionately disadvantage the government or interfere with the ethical and orderly administration of justice." *Id.* (citation omitted). Typically, this issue is raised in cases in which the defendant seeks substitution of counsel shortly before the start of the trial or during the trial itself. *See, e.g., id.* (in which this court upheld Panzardi's attempt, in a different case, to substitute counsel for out-of-town attorney over three months prior to trial); *Sampley v. Attorney General of North Carolina*, 786 F.2d 610, 612–16 (4th Cir.) (upholding district court's refusal to grant continuance in case in which defendant showed up on day of trial with no counsel), *cert. denied*, 478 U.S. 1008, 106 S.Ct. 3305, 92 L.Ed.2d 719 (1986); *United States v. Mastroianni*, 749 F.2d 900, 913–14 (1st Cir.1984) (upholding district court's refusal of defendant's motion to substitute counsel four days prior to trial). It is also appropriate, however, for the court to consider the effect of the attorney's past actions (especially past ethical violations) on the administration of justice within the court.

Local Rule 204.2, permitting *pro hac vice* appearances by attorneys before the District Court for the District of Puerto Rico, is discretionary in nature. Although the rule specifies some requirements necessary for such an appearance, the rule states that an attorney *"may* be permitted to appear" and that the district court *"may* find the person meets the standards for practice in this Court." Local Rule 204.2 (emphasis added). Thus, even if all requirements are satisfied, the court may, in its sound discretion, deny the request for admission.

Panzardi cites to a decision of the United States Court of Appeals for the Fifth Circuit requiring formal proceedings before making a discretionary decision not to grant a *pro hac vice* application. *In re Evans*, 524 F.2d 1004 (5th Cir.1975). The lower court in that case had denied admission to a foreign attorney because of past offensive acts before the court. The circuit set very stringent standards, requiring that the unethical behavior be of the frequency or nature whereby the attorney could face disbarment proceedings. *Id.* at 1007. Moreover, the court held that a hearing must be conducted giving the attorney the opportunity to rebut specific allegations. *Id.* at 1008.

This court, however, has never adopted such requirements, nor are we inclined to do so at this time. *See Panzardi*, 678 F.Supp. at 360. Admission before the Bar traditionally has been considered primarily and initially subject to control by the admitting court and this control is subject to review only by reason of abuse of discretion or constitutional infirmities in the exercise of the control. The Supreme Court has rejected the argument that *pro hac vice* admissions are protected by either due process or equal protection. *Leis v. Flynt*, 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed. 2d 717 (1979) (per curiam). The Court held that an attorney's interest in appearing *pro hac vice* is not a protected liberty or property interest under the constitution in states in which these admissions are autho-

rized through "wholly and *expressly* discretionary" statutes. *Id.* at 442–44 & n. 8, 99 S.Ct. at 700–01 & n. 8 (emphasis in original).

■ The court below based its decision primarily on its finding that there had been "a joint representation scheme that had acted to the detriment of at least one codefendant, and that was executed in significant part by an attorney not admitted to practice in that case." *Panzardi*, 678 F.Supp. at 358. The judge below found that White had acted in a manner inconsistent with Federal Rule of Criminal Procedure 44(c),[3] and therefore had also violated certain sections of the Model Rules of Professional Conduct. The district judge also considered White's actions with McKenna outside of his chambers. Other circuits have upheld lower courts' decisions to deny *pro hac vice* admissions because there has been evidence of ethical violations. *See D.H. Overmyer Co. v. Robson*, 750 F.2d 31 (6th Cir.1984) (affirming the bankruptcy court's denial of *pro hac vice* admission when there was some evidence of conflict of interest that had not been reported to the court); *Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602 (8th Cir.1977) (acknowledging power of district court to disqualify attorney if representation raised the "mere appearance of impropriety"), *cert. denied*, 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978); *Hull v. Celanese Corp.*, 513 F.2d

568 (2d Cir.1975) (denial of application because of conflict of interest); *Thomas v. Cassidy*, 249 F.2d 91 (4th Cir.1957) (affirming district court's refusal to admit attorney *pro hac vice* because of attorney's "unlawyerlike conduct"); *cf. Panzardi*, 816 F.2d at 817 (recognizing that, although the one case per year rule is unconstitutional, a court may in its discretion deny *pro hac vice* application because of unethical conduct).

It was in the discretion of the district court whether to accept White's application for admission *pro hac vice*. The court below was fully familiar with the circumstances surrounding White's actions, in much greater detail than we could be through a review of the record alone. In this light, the court determined that a potential conflict of interest had existed. The court also found that other ethical violations may have occurred due to White's actions outside of the judge's chambers and because White had failed to inform the court of his involvement in the representation of Nieves–Báez. The record supports these findings by the district judge, as well as his decision to deny White's admission. Therefore, we find that there was no abuse of discretion and we affirm this decision.[4]

### III. *Ineffective Assistance of Counsel Claim*

■ Panzardi argues that his conviction should be vacated because of the inadequa-

---

**3.** Rule 44(c) states in relevant part:

(c) **Joint Representation.** Whenever two or more defendants have been jointly charged … and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation.

Although the rule does not specifically mandate that the court be informed of potential conflicts, a court must, of course, be aware that there is such representation before it is able to warn the parties of the inherent dangers. Thus, it seems implicit that the court must be informed of these situations. The advisory note on this rule states that "[a]voiding a conflict-of-interest situation is in the first instance a responsibility of the attorney." *See Cuyler v. Sullivan*, 446 U.S. 335, 346, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980) (footnote omitted) ("Defense counsel

have an ethical obligation … to advise the court promptly when a conflict of interest arises during the course of a trial."); *United States v. Gambino*, 864 F.2d 1064, 1082 (3d Cir.1988) (Mansmann, J., dissenting) ("counsel who recognizes a potential conflict has a duty to inform not only his other client but the court as well"). The Model Rules of Professional Conduct, which require attorneys to inform the court of all facts material to a case, also support this interpretation.

**4.** We need not address further Panzardi's argument that the denial of White's second application was invalid because of the holding by this court that the one case per year rule was unconstitutional. The district judge also had denied this application on ethical grounds and, as we have concluded above, we find that the ethical considerations relied upon by the judge were reasonable.

cy representation by Porrata. The next issue that we must address, therefore, is the effect of Panzardi's plea: whether his plea, after a complete Rule 11 colloquy, effectively precluded him from challenging his conviction on these grounds.

Panzardi claims that his guilty plea was made solely because of Porrata's ineffective assistance. Panzardi had been held in New York, rather than Puerto Rico, where his trial was to be held, until approximately three weeks prior to the start of his trial. Porrata did not petition the court for an earlier transfer in order to facilitate trial preparation. White alleged in an affidavit submitted to the court below that Porrata indicated that he would do nothing to assist the effectuation of Panzardi's transfer until he was paid monies owed him by Panzardi. App. at 314. Panzardi alleges that, upon his return, Porrata informed him that Porrata was not prepared and would be unable to be ready for trial. Thus, the argument goes, Panzardi was forced to begin plea negotiations because he was faced with a "sure defeat" in court due to Porrata's lack of preparation.

A guilty plea is valid as long as the decision was based on "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985). Ineffective assistance of counsel may undermine the voluntariness of a guilty plea by the defendant. *Id.* The Court in *Hill* concluded that the two-prong inquiry developed in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for determining ineffective assistance of counsel also applies to cases in which the defendant pleaded guilty. *Hill,* 474 U.S. at 57, 106 S.Ct. at 369.

First, an objective standard of reasonableness must be applied to evaluate the work done, and the advice given, by counsel prior to the defendant's change of plea. *Id.* at 56, 106 S.Ct. at 369. The voluntariness of the plea will depend upon the objective determination of whether counsel's advice was reasonably competent. *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The second *Strickland* prong is whether there is a "reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59, 106 S.Ct. at 370 (footnote omitted). Defendants must show that their decisions to plead guilty were "actually and materially influenced" by their counsels' errors. *Dufresne v. Moran,* 729 F.2d 18, 23 (1st Cir.1984).

This court considers Rule 11 colloquies to be very relevant and probative evidence to the first part of the *Strickland* test because of their proximity to the time of the defendant's change of plea. *See United States v. Butt,* 731 F.2d 75 (1st Cir.1984). Generally, we will accept the accuracy and the truth of the Rule 11 motion unless the defendant makes a specific showing that the testimony was not in fact accurate. *Id.* "[T]he petitioner must present valid reasons why he should be relieved of his statements at a Rule 11 hearing in order to 'overcome the presumption of regularity which the record ... imports.' " *Ouellette v. United States,* 862 F.2d 371, 375 (1st Cir.1988) (quoting *Walker v. Johnston,* 312 U.S. 275, 286, 61 S.Ct. 574, 579, 85 L.Ed. 830 (1941)).

For instance, in *United States v. Giardino,* 797 F.2d 30 (1st Cir.1986), we held that summary dismissal of a defendant's § 2255 motion, claiming that ineffective assistance of counsel was the sole cause of his guilty plea, was inappropriate and that a hearing was required. Therefore, the verdict against the defendant was vacated. The defendant, however, had discovered the evidence indicating errors by his counsel only after the Rule 11 inquiry had been conducted and thus, considering the context in which those statements were made, his statements at that time were not considered probative or contradictory. *Id.* at 32.

A thorough inquiry under Federal Rule of Criminal Procedure 11(c)(1) was conducted by the district court before Panzardi's guilty plea was accepted. Panzardi, under

oath, agreed to the government's version of his involvement in the murder of the government witness. He testified that he had fully discussed his case with Porrata and that he was satisfied with Porrata's representation. *See Ouellette,* 862 F.2d at 376.

Nevertheless, Panzardi now complains that Porrata's representation was inadequate on two grounds. First, he argues that his attorney erred in failing to effectuate an earlier transfer of Panzardi back to Puerto Rico. The court below found that this decision could have been based on the legitimate security risks that would have accompanied Panzardi's return. *Panzardi,* 678 F.Supp. at 363–64 (citing to Panzardi's own assertions that there was a "price on his head"). We have found nothing in the record that indicates otherwise and we refuse to speculate whether an earlier return would have indeed been a wiser tactical choice. *See United States v. Thomann,* 609 F.2d 560, 566 (1st Cir.1979) (refusing to "open the door to Monday morning quarterbacking of trial tactics").

More significantly, Panzardi argues that Porrata was so unprepared for trial that he had no choice but to plead guilty. We find that Porrata's performance was clearly within the "wide range of reasonable professional assistance," *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, and thus even the first prong of *Strickland's* two-part test is not satisfied. In giving guidance to lower courts in making ineffective assistance of counsel determinations, the Court in *Strickland* stated that counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. Panzardi has put forth no evidence except for his statements and those in White's affidavit supporting his claim that Porrata was completely unprepared for trial. He has shown no evi-

dence that would explain why he had sworn during his Rule 11 inquiry that he was satisfied with Porrata's services when presumably he had decided to plead specifically because he was not so satisfied.

As the district court has noted, Porrata filed numerous motions on Panzardi's behalf. Moreover, he negotiated the final plea agreement in which the government dropped two of the three charges pending against Panzardi. The record indicates that Porrata was well-prepared at Panzardi's Rule 11 hearing and vigorously asserted Panzardi's interests. These actions, considered with Panzardi's testimony during his Rule 11 questioning to the effect that he was satisfied with Porrata's representation, leaves no conclusion but that Porrata's representation meets constitutional muster.[5] There is therefore no valid reason presented for reversing the district court's findings and conclusions.

## IV. *The Recusal Motion*

Title 28, United States Code Section 455(a) states "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The well-established test in this circuit is an objective one:

> whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion under 28 U.S.C. § 455, but rather in the mind of the reasonable man.

*United States v. Cowden,* 545 F.2d 257, 265 (1st Cir.1976), *cert. denied,* 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977). Under this section, judicially acquired information can form the basis of a judge's disqualification as long as it meets the

---

5. Although there is no need to decide the issue, there is little doubt that Panzardi would have failed the second prong of the *Strickland* test as well. It is very likely that Panzardi would be unable to show that he would not have pleaded guilty but for Porrata's actions. The govern-

ment had substantial evidence against Panzardi, including quite possibly the testimony of his girlfriend, Nieves–Báez. Such a strong case against him very likely influenced his decision to change his plea and not risk a trial.

standard established in *Cowden*.[6] *United States v. Cepeda Penes*, 577 F.2d 754 (1st Cir.1978).

■ Prior adverse rulings alone cannot, of course, be the basis for a motion to recuse. *Cowden*, 545 F.2d at 265. Similarly, it is not enough to argue that the judge is partial because he or she had been involved in other stages of the case. "Participation in prior proceedings involving the same ... parties does not in itself constitute grounds for disqualification." *United Union of Roofers, etc., Union No. 33 v. Meese*, 823 F.2d 652, 659 (1st Cir.1987). We will review a judge's decision against recusal only to see if the judge's determination amounted to an abuse of discretion. *United States v. Parrilla Bonilla*, 626 F.2d 177, 179 (1st Cir.1980).

Panzardi's claim of bias focuses primarily on alleged hostilities between the judge below and White. In fact, Panzardi's only indication of prejudice against him is the judge's denial of Panzardi's motion to reduce his sentence in light of his cooperation with the authorities. The majority of his argument focuses on what Panzardi perceives to be the arbitrary and legally insupportable denials of White's *pro hac vice* applications. He cites to sections of the judge's denials which he claims indicates the full extent of the judge's animus against this attorney. In describing the scene outside of his courtroom, the judge stated that he had a "first hand opportunity to observe [White's] style and tactics.... McKenna and White positioned themselves at the doors to this Judge's Chambers, constantly knocking and inquiring whether a decision had been rendered. Finally, a U.S. Marshal was called to remove the two attorneys and abate the nuisance." *Panzardi*, 678 F.Supp. at 356. Panzardi argues that this description was inaccurate, presumably, therefore, revealing the judge's biased views.

■ When requesting a judge's recusal, defendants typically argue that the judge harbored a bias or prejudice against them; there are times, however, such as in this case, when a defendant argues instead that the judge should be disqualified because of prejudice against the defendant's attorney which may be transferred to the defendant. As a general rule, bias against the party must be shown and it is insufficient to rely on "clashes between court and counsel" as the basis of a disqualification motion. *In re Cooper*, 821 F.2d 833, 838 (1st Cir.1987) (per curiam). There are, however, some extreme cases in which the judge's attitude toward a party's attorney will be so hostile that it would be reasonable to conclude that the judge will be unable to remain impartial as to the client. *Id.* at 839. These cases are rare, as generally "[a] court's disagreement—even one strongly stated—with *counsel* over the propriety of trial tactics does not reflect an attitude of personal bias against the *client*." *Id.* at 841 (emphasis in original).

■ We find no evidence of bias that would have necessitated the recusal of the judge below. Appellant points to past rulings against his attorney and what he considers to be mistaken decisions by the court.[7] This alone is not enough. Appellant has failed to put forth any evidence showing bias against him or such a strong prejudice against White that it would have been reasonable to infer that Panzardi would have been denied a fair trial.

---

6. This standard is in contrast to § 455(b), which requires recusal if a judge has "personal bias or prejudice concerning a party." *See also* 28 U.S.C. § 144 (under which *personal* bias is also required). Under subsection (b), this court has repeatedly held that the personal bias or prejudice must have been acquired extra-judicially. *See United States v. Kelley*, 712 F.2d 884, 889–90 (1st Cir.1983). Panzardi acknowledges that the alleged district judge's prejudice was caused by facts learned through his judicial capacity and therefore he limits his claim to § 455(a).

7. Even if Panzardi was correct that at least one of White's numerous motions requesting *pro hac vice* applications should have been granted, that alone would still be insufficient to require the judge's disqualification. As we have stated before, mistakes of law are not evidence of bias. *In re Cooper*, 821 F.2d 833, 843 (per curiam) ("Even a judge's mistaken judgment that an attorney is in need of sanction, like a judge's mistaken ruling on, say, a pretrial motion, would not establish prejudice or the appearance thereof.").

Panzardi's other argument in support of this motion is that the judge below should have recused himself when considering the § 2255 motion because he had been the sentencing judge and therefore his knowledge of the case led to an unavoidable conflict of interest. In making this argument, Panzardi relies primarily on our opinion in *Halliday v. United States*, 380 F.2d 270 (1st Cir.1967). In *Halliday*, we examined the circumstances under which it would be appropriate for the sentencing judge to also rule on the defendant's § 2255 motion. The defendant in that case argued in his post-conviction motion that his guilty plea was not valid because the judge below erred in not inquiring into the voluntariness and understanding of the plea during a required Rule 11 hearing. Because that challenge would have forced the same judge to evaluate the correctness of his actions, we held that it was preferable, although clearly not required, that under those circumstances a different judge conduct the evidentiary hearing necessary for deciding the § 2255 motion. *Id.* at 274.

As we have tried to clarify in subsequent cases, *Halliday* was a recommendation limited to specific instances. *See Tracey v. United States*, 739 F.2d 679, 681 (1st Cir. 1984) (stating that *Halliday* held only that a district judge, who accepted a guilty plea without making any inquiry into the voluntariness of the plea, should not also decide a § 2255 motion claiming that the judge violated Rule 11), *cert. denied*, 469 U.S. 1109, 105 S.Ct. 787, 83 L.Ed.2d 781 (1985). We have held that no bright line rules are possible in this area and instead a balancing of all relevant factors is required before determining if the same judge should be the one to conduct an evidentiary hearing necessary to a § 2255 motion. *O'Shea v. United States*, 491 F.2d 774, 778-80 (1st Cir.1974). In fact, we specifically stated in *Halliday* that "[t]his interdiction does not mean that the sentencing judge cannot review a § 2255 petition to conclude, if appropriate, that no evidentiary hearing is required." 380 F.2d at 274. This standard was relied upon by this court in *Tracey* in affirming the sentencing judge's dismissal of a § 2255 motion without a hearing. 739 F.2d at 681-82.

Therefore, it seems to us that Panzardi has misread the mandate of *Halliday*. Clearly, there is nothing *per se* wrong with the district judge's dismissal of Panzardi's § 2255 motions without an evidentiary hearing solely because he was the sentencing judge. This issue may have been more problematic if indeed an evidentiary hearing was necessary before disposition of the motions was possible. However, we agree with the court below that summary dismissal was appropriate in this case.[8] There

---

[8.] Panzardi also argues that it was improper for the judge below to rule on the § 2255 motion without the benefit of an evidentiary hearing. We disagree. Rule 4(b) of the Rules Governing Proceedings in U.S. District Courts under 28 U.S.C. § 2255 states that a hearing is not necessary, if, after an examination of the record, transcript, and other relevant papers, "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." The defendant's allegations must be taken as true, "except to the extent they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *United States v. Mosquera*, 845 F.2d 1122, 1124 (1st Cir.1988). As this circuit has stated recently, "even if a § 2255 motion is facially adequate, a hearing is not necessary before dismissal if the motion is 'conclusively refuted as to the alleged facts by the files and records of the case.'" *Myatt v. United States*, 875 F.2d 8 (1st Cir.1989) (quoting *Moran v. Hogan*, 494 F.2d 1220, 1222 (1st Cir.1974)). Moreover, "if the claim is based upon facts with which the trial court, through review of the record or observation at trial, is familiar, the court may make findings without an additional hearing, and, as is the case for findings of the trial court generally, those findings will not be overturned unless they are clearly erroneous." *United States v. DiCarlo*, 575 F.2d 952, 954-55 (1st Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 129 (1978).

Panzardi's three claims for relief within his § 2255 motion were based upon 1) the denial of his counsel of choice; 2) ineffective assistance of counsel by Porrata; and 3) a breach of his plea agreement (which claim we will discuss further). He claims that just the first two of these issues required an evidentiary hearing. The district judge, however, was intimately familiar with the facts relevant to these issues, having ruled on each of the *pro hac vice* applications, presided over the Rule 11 hearing, imposed sentence, and ruled on Panzardi's Rule 35 motion. *See McCarthy v. United States*, 764 F.2d 28, 31-32 (1st Cir.1985) (per curiam).

was no reason that the judge below should have disqualified himself before deciding these motions and therefore, we affirm the judge's actions in this respect.

## V. The Alleged Violation of Panzardi's Plea Agreement

■ Before Panzardi changed his plea, he and the government entered into a plea agreement, wherein he would plead guilty to Count I and cooperate fully with government investigations. In return, the government agreed to drop the other two counts, recommend that Panzardi serve this sentence concurrently with the sentences that he received in the two prior drug cases, fully inform the court at sentencing as to the extent of Panzardi's cooperation, and then inform the Parole commission as to any further cooperation.

Panzardi argues that the government and the court below breached this plea agreement, because the court supposedly was not fully informed about the details of Panzardi's cooperation. The record shows otherwise. At sentencing, the government attorney stated "We have through the Probation Office, as well as directly with Your Honor indicated to the court the extent and the significance of Mr. Panzardi's cooperation. Suffice to say at this point that he has cooperated fully." App. at 202. He stated that no indictments had yet been returned as a result of the cooperation, but he explained that he had clarified that point because of an unintentional misrepresentation by Porrata that indictments had been handed down. To ensure that he was not undercutting the significance of Panzardi's cooperation, he continued, "[h]owever, that is not to underscore the significance of his cooperation. He has cooperated *fully* but I believe there have been no indictments returned." *Id.* (emphasis added).

Panzardi filed a timely motion to reduce sentence, pursuant to Rule 35(b), based primarily on his continuing cooperation. The government attorneys in their response stated that Panzardi had "been cooperating with the Government in other investigations and cases, and [his] cooperation has resulted in numerous individuals involved in illegal drug trafficking here in Puerto Rico being indicted and convicted." These other cases had required Panzardi to work with attorneys at the Justice Department and the government's response to the Rule 35(b) motion also informed the judge of their names, because they were available to furnish additional information, if necessary. The judge did not contact these individuals before denying Panzardi's motion.

Panzardi moved for reconsideration. In his final order, the judge reclassified his sentence, pursuant to 18 U.S.C. § 4205, thereby possibly decreasing the amount of time that Panzardi would be required to serve before he could be paroled. He stated

[W]e now resentence Panzardi as follows.

Panzardi will remain sentenced to ninety-nine years concurrent with the sentences imposed in cases Nos. 85–116 and 85–117. However, we strongly urge the Parole Commission to consider Panzardi's cooperation with the Department of Justice for purposes of parole eligibility guidelines, even before he meets the ten-year minimum imprisonment period mandated by a 99–year sentence. 18 U.S.C. secs. 4205(a) and (b)(2). The prisoner may then be released on parole at such earlier time as the Commission may determine.

In resentencing Panzardi we have considered ... his extensive assistance to the Department of Justice....

*Panzardi*, 678 F.Supp. at 365.

The government may not breach any term of a plea agreement which induced the defendant to plead guilty. *Santobello*

---

Also, the court appropriately considered affidavits submitted by Panzardi, White, and Attorney O'Donnell. *See* Rule 7(b) of the Rules Governing Proceedings of the U.S. District Courts under 28 U.S.C. § 2255; *Porcaro v. United States,* 832 F.2d 208, 212 (1st Cir.1987) (per curiam). A hearing would have added little to this extensive record. Therefore, an evidentiary hearing was not required under these circumstances. *See Ouellette v. United States,* 862 F.2d 371, 377 (1st Cir.1988) (familiarity of the trial judge with case obviated necessity of evidentiary hearing on § 2255 motion); *McCarthy,* 764 F.2d at 31 (same).

*v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). Other circuits have held that a defendant's sentence must be vacated if the government breached its promise to inform the court of the defendant's cooperation. *See United States v. Martin*, 788 F.2d 184 (3d Cir. 1986); *cf. United States v. Williams*, 656 F.2d 357 (8th Cir.1981) (affirming sentence because the terms of agreement had been fulfilled through Rule 35(b) motion and therefore vacating sentence and requiring resentencing would be futile). It is obvious, however, that a finding of breach is an essential element of these cases. The trial judge makes the factual determination of whether there has been a breach of the plea agreement. *United States v. González–Sánchez*, 825 F.2d 572, 578 (1st Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987). We will not reverse this determination, therefore, unless clearly erroneous. *Id.*

The district judge found that there had been no breach of Panzardi's agreement. We agree. There is ample evidence in the record to support that the government repeatedly informed the court as to the nature and the extent of Panzardi's cooperation. Moreover, the district judge specifically noted that he had listened to this information and had considered it when sentencing Panzardi and when ruling upon Panzardi's later motions to reconsider. In fact, the court eventually amended its sentencing decision such that Panzardi need not serve as long before parole, specifically because of his cooperation. Further evidence of compliance with the agreement, even if possible, is not necessary. *The rulings of the district court are affirmed.*