# PCG Trading, LLC *vs.* Seyfarth Shaw, LLP, & others.[1]

Suffolk. April 7, 2011. - July 29, 2011.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Attorney at Law,* Admission pro hac vice. *Rules of Professional Conduct.*

In a civil action alleging, inter alia, legal malpractice, a Superior Court judge erred in denying the plaintiff's motion for admission of an out-of-State attorney pro hac vice, where remarks made by a second out-of-State attorney (who was also associated with the same law firm representing the plaintiff) to a legal newspaper fell within the exceptions to the prohibition in Mass. R. Prof. C. 3.6 against making out-of-court statements, in that the second attorney, in words generally identical to those used in the complaint, summarized a primary claim of the plaintiff against the defendant law firm, and in that court filings reflecting the alleged misstatement to which the second attorney referred were matters of public record [269-275]; and where the existence of adequate local representation, by itself, was not sufficient to support the denial of the motion [275-276].

CIVIL ACTION commenced in the Superior Court Department on July 29, 2009.

A motion for admission of an attorney pro hac vice was heard by *Margaret R. Hinkle,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert L. Garner (Matthew J. Walko* with him) for the plaintiff.

*Robert J. Muldoon, Jr. (David M. Dineen* with him) for the defendants.

BOTSFORD, J. PCG Trading, LLC (PCG), has filed a complaint for legal malpractice and related claims against Seyfarth Shaw, LLP, and four individual attorneys associated or formerly associated with the firm. The sole issue raised in this appeal is whether a motion filed by PCG for admission of an attorney pro hac vice was properly denied by a judge in the Superior Court. We conclude that PCG's motion should have been allowed.

[1] Richard Alfred, William Prickett, Stephen Bazarian, and Robert Lovett.

1. *Background.* The following facts are taken from the allega-
tions of PCG's amended complaint pending in the Superior
Court. Seyfarth Shaw's representation of PCG in Massachusetts
arose in connection with two lawsuits that originated in Cali-
fornia. In 2002 and in 2005, respectively, Ellen Costigan
obtained two judgments against the company Converge, LLC,
and its parent, Converge, Inc. (collectively Converge), in Cali-
fornia[2]; Seyfarth Shaw represented Converge in connection
with both cases. Costigan had been an employee of Converge,[3]
and the first action was one for unpaid wages, brought before
the California Labor Commission (commission) in 2001. The
commission awarded Costigan approximately $130,000 in
unpaid wages, interest, and penalties. Seyfarth Shaw, on behalf
of Converge, unsuccessfully appealed the award to the
California Superior Court, and on November 2, 2002, the
court entered judgment against Converge on the commission's
award. At some point in this time period, Converge relocated
to Massachusetts, and on November 29, 2002, Costigan com-
menced an action against Converge in the Superior Court for
Essex County seeking to enforce the unpaid wages judgment
(Essex County action).

In March of 2003, PCG purchased substantially all of Con-
verge's assets. Under the terms of the asset purchase agreement,
Converge remained responsible for Costigan's two claims against
Converge, and agreed to indemnify PCG for any losses arising
out of them. Seyfarth Shaw at the time continued to represent
Converge in connection with Costigan's claims, but also took on
PCG as a client for various matters. However, Seyfarth Shaw did
not disclose to PCG any actual or potential conflicts of interest
relating to its representation of both Converge and PCG.

On May 16, 2003, less than two months after the asset purchase
of Converge by PCG, Seyfarth Shaw filed an unsealed motion

[2]The amended complaint of PCG Trading, LLC (PCG), contains a number
of allegations, some contradictory, concerning which party or parties —
Converge, Inc., or Converge, LLC, or both — the California judgments were
against. These points are not relevant to this appeal, and for ease of reference
we draw no distinction between the two Converge companies.

[3]The amended complaint alleges that Costigan was an employee of Converge,
LLC, not Converge, Inc. Again, however, the distinction is not relevant to the
issues raised in this appeal.

to withdraw as counsel for Converge in the Essex County action. In the motion, Seyfarth Shaw stated:

> "Seyfarth Shaw is informed, and therefore believes, that [Converge]: (i) is no longer in business; (ii) no longer has any employees, other than several directors and officers outside of Massachusetts, or any facilities; (iii) has no tangible or intangible assets in Massachusetts; and (iv) cannot pay Seyfarth Shaw for additional services. . . .
>
> "Seyfarth Shaw's withdrawal will not result in a material adverse effect on [Converge]. Even assuming, arguendo, that [Costigan's] Motion for Summary Judgment is allowed, that ruling will have no effect on [Converge]. [Costigan's] action is solely to enforce a judgment of a foreign jurisdiction. [Converge] has no assets in Massachusetts. Therefore, [Costigan] will be unable to enforce in Massachusetts the judgment [she] obtains, if any, against [Converge] in this action."

Seyfarth Shaw's motion to withdraw was allowed, and Converge thereafter was defaulted. In December, 2003, judgment entered in the Essex County action against Converge in the amount of $143,840.67. Converge did not pay the judgment.

In March of 2002, Costigan filed an action against Converge alleging sex discrimination and wrongful discharge in the California Superior Court. Seyfarth Shaw, representing Converge, removed the case to the United States District Court for the Central District of California. Later, and over Converge's objection, Seyfarth Shaw withdrew from representing Converge. Converge defaulted in the action as a result of Seyfarth Shaw's withdrawal, and a default judgment of more than $3 million entered against Converge in November, 2005.

On July 25, 2006, Costigan commenced an action in the Superior Court for Norfolk County (Norfolk County action) against PCG and Converge, seeking to enforce against both companies the 2005 California default judgment and to enforce against PCG only the 2002 unpaid wages judgment. Seyfarth Shaw represented PCG in this action; Converge did not appear. In July, 2007, following a bench trial, a Superior Court judge found that the 2003 asset purchase of Converge by PCG was a

de facto merger of the two companies as well as a fraudulent transfer, thereby rendering PCG liable for both of Costigan's California judgments against Converge. Soon thereafter, judgment in the Norfolk County action entered against PCG in the amount of $3,323,802 plus interest. In December, 2007, PCG, represented by new counsel, entered into a settlement agreement with Costigan, and PCG's appeal from the Norfolk County judgment was dismissed.

PCG filed the present action against Seyfarth Shaw in the Superior Court for Suffolk County in July of 2009. The amended complaint includes claims for legal malpractice, breach of contract, breach of fiduciary duty, and violation of G. L. c. 93A, based in substantial part on Seyfarth Shaw's alleged conflict of interest arising from its dual representation of Converge and PCG in connection with the Costigan claims, and failure to advise PCG of that conflict.[4] On or about October 2, 2009, PCG served on Seyfarth Shaw a motion to admit both William A. Brewer, III, and Robert L. Garner pro hac vice as PCG's trial counsel. Garner is a senior counsel in the New York City office of the Dallas-based law firm of Bickel & Brewer, and Brewer is a partner in the same firm. Garner is a member in good standing of the State bars of New York and New Jersey.

Although Seyfarth Shaw initially assented to PCG's motion, PCG never filed it with the court. Instead, on October 29, PCG filed a motion to admit only Garner pro hac vice. Also on October 29, an article appeared in an Internet issue of the National Law Journal entitled, "Former client sues Seyfarth Shaw, claiming malpractice, conflict of interest." The article summarized many of the allegations of PCG's complaint, and in particular, included the following:

> "According to the lawsuit, Seyfarth's mistakes include filing an unsealed motion to withdraw from representing Converge in Essex County Superior Court when Costigan filed suit there to enforce the California wage judgment. PCG argues that Seyfarth's description of Converge as an insolvent, virtually nonexistent company 'would provide

---

[4] We describe specific allegations in the amended complaint that relate to these issues *infra.*

ammunition for Costigan to assert a successor liability claim.'

"PCG's lawyer, Bill Brewer of Dallas-based Bickel & Brewer, said PCG's deal with Converge was structured as an asset purchase not a merger.

" *'The difficulty is that Seyfarth [filed court] papers in an attempt to relieve itself of its responsibility to another client of theirs, Converge, that not only misstated the facts, but stated the facts in a way that supported their[5] notion of [PCG's] successor liability.'*

"Taking this position when withdrawing from the Converge case jeopardized Seyfarth's fiduciary responsibility to PCG, he said." (Emphasis added.)

In response to this article, Seyfarth Shaw withdrew its assent to PCG's motion to admit Garner pro hac vice, and filed an opposition.

A Superior Court judge (motion judge) held a hearing on the motion on November 19, 2009. Seyfarth Shaw argued primarily that Brewer's comment quoted in the article violated Mass. R. Prof. C. 3.6, 426 Mass. 1392 (1998), and served as a ground to deny the motion to admit Garner pro hac vice. The motion judge denied PCG's request for Garner's pro hac vice admission. PCG appealed from the denial to the Appeals Court, and we transferred the case to this court on our own motion.[6]

2. *Discussion.* "[A] member of the bar, in good standing, of any other state may appear, by permission of the court, as attorney or counselor, in any case pending therein, if such other state grants like privileges to members of the bar, in good standing, of this commonwealth." G. L. c. 221, § 46A, inserted by St. 1935, c. 346, § 2. However, as this court has stated, "per-

---

[5]There appears to be no dispute that the "their" refers to Costigan.

[6]"[A]n order granting a motion to disqualify counsel has traditionally been held to be a final judgment and therefore immediately appealable under the collateral order doctrine of *Cohen* v. *Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546 (1949) . . . . As such, the ruling may properly be appealed under G. L. c. 231, § 117." *DiLuzio* v. *United Elec., Radio & Mach. Workers, Local 274,* 391 Mass. 211, 214 (1984) (*DiLuzio*). The parties agree, as do we, that the appeal is properly before this court.

mission of the judicial department is not merely important but is essential to the right to appear as an attorney under G. L. c. 221, § 46A," *DiLuzio* v. *United Elec., Radio & Mach. Workers, Local 274*, 391 Mass. 211, 215 (1984) (*DiLuzio*), and "the degree of discretion accorded a judge in deciding whether to admit an out-of-State attorney is broad." *Merles* v. *Lerner*, 391 Mass. 221, 223 (1984).

The motion judge denied PCG's motion "substantially for the reasons set forth in [Seyfarth Shaw's] opposition." We turn, therefore, to the two reasons Seyfarth Shaw presented in its written opposition to PCG's motion to admit Garner pro hac vice; these are the same principal grounds the firm advances on appeal. First, Seyfarth Shaw stated, and argues here, that PCG is adequately represented by local counsel, an element judges consider in exercising their broad discretion to decide whether to allow an attorney to appear pro hac vice. Second, and the primary reason asserted below and on appeal, Seyfarth Shaw claims that Brewer's comment to the National Law Journal violated Mass. R. Prof. C. 3.6, 426 Mass. 1392 (1998).[7] We consider the second reason first.

a. *Violation of rule 3.6.* Rule 3.6 (a) precludes a lawyer who is involved in the litigation of a case from making an out-of-court

---

[7]Rule 3.6 of the Massachusetts Rules of Professional Conduct, 426 Mass. 1392 (1998), provides, in relevant part:

"(a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

"(b) Notwithstanding paragraph (a), a lawyer may state:

"(1) the claim, offense, or defense involved, and, except when prohibited by law, the identity of the persons involved;

"(2) the information contained in a public record;

"(3) that an investigation of the matter is in progress;

"(4) the scheduling or result of any step in litigation;

"(5) a request for assistance in obtaining evidence and information necessary thereto;

statement "that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." However, rule 3.6 (b) "identifies specific matters about which a lawyer's statements would not ordinarily be considered to present a substantial likelihood of material prejudice, and should not in any event be considered prohibited by the general prohibition of paragraph (a)." Comment [4] to rule 3.6. See *Matter of Cobb*, 445 Mass. 452, 475 n.7 (2005) ("Rule 3.6 . . . concerning trial publicity, contains a safe harbor provision for certain extrajudicial statements"). See also Restatement (Third) of the Law Governing Lawyers, § 109 (c), at 162-163 (2000) (same, discussing earlier version of rule).

Seyfarth Shaw focuses on Brewer's statement that Seyfarth Shaw "misstated the facts," and argues that Brewer, in using this phrase, was charging Seyfarth Shaw with lying in court papers, or, as Seyfarth Shaw puts it, using words "which describe Seyfarth as a law firm that, in its own self-interest, intentionally filed false submissions to courts." As such, the argument goes, Brewer was impugning Seyfarth Shaw's "character, credibility, and reputation," thereby placing the comment within the class of subjects "which are more likely than not to have a material prejudicial effect on a proceeding," Comment [5] to rule 3.6, and thus covered by the proscription set forth in rule 3.6 (a).

We think Seyfarth Shaw's characterization of Brewer's statement exaggerates the level of the statement's negative impact, but in any event, Seyfarth Shaw's argument fails. Rule 3.6, adopted in the Commonwealth in 1997, replaced the more restrictive S.J.C. Rule 3:07, DR 7-107 (G), as appearing in 382 Mass. 788 (1981).[8] Rule 3.6 follows in substance the corresponding American Bar Association (ABA) Model Rule of

---

"(6) a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest; . . .

"(d) No lawyer associated in a firm or government agency with a lawyer subject to paragraph (a) shall make a statement prohibited by paragraph (a)."

[8] Supreme Judicial Court Rule 3:07, DR 7-107 (G), as appearing in 382

Professional Conduct, as amended in 1994.[9] As the sources
cited previously indicate, rule 3.6 (a) delineates prohibited
conduct, while rule 3.6 (b) sets out exceptions, providing safe
harbor for certain categories of statements that do not violate
the prohibition in rule 3.6 (a).[10] Under rule 3.6 (b), "a lawyer
may state: (1) the claim, offense, or defense involved, and, except
when prohibited by law, the identity of the persons involved;
[and] (2) the information contained in a public record."

A review of the record establishes that Brewer's remark quoted
in the National Law Journal falls well within these two excep-
tions. Brewer's statement that Seyfarth Shaw, "in an attempt to

---

Mass. 788 (1981), provided:

> "A lawyer or law firm associated with a civil action shall not during
> its investigation or litigation make or participate in making an extraju-
> dicial statement, other than a quotation from or reference to public rec-
> ords, that a reasonable person would expect to be disseminated by
> means of public communication and that relates to:

> "(1) Evidence regarding the occurrence or transaction involved.

> "(2) The character, credibility, or criminal record of a party, witness,
> or prospective witness.

> "(3) The performance or results of any examinations or tests or the
> refusal or failure of a party to submit to such.

> "(4) His opinion as to the merits of the claims or defenses of a
> party, except as required by law or administrative rule.

> "(5) Any other matter reasonably likely to interfere with a fair trial
> of the action."

[9]Following the adoption of Mass. R. Prof. C. 3.6, the American Bar As-
sociation (ABA) adopted an amended version of Rule 3.6 of the Model Rules
of Professional Conduct, that is, except for paragraph (e), almost identical to
the language of the Mass. R. Prof. C. 3.6.

[10]The relationship between rule 3.6 (a) and (b) is supported by the rule's
commentary. Comment [3] to rule 3.6 states: "The Rule sets forth a basic
general prohibition against a lawyer's making statements that the lawyer
knows or should know will have a substantial likelihood of materially prejudic-
ing an adjudicative proceeding." Comment [4], in turn, states: "Paragraph (b)
identifies specific matters about which a lawyer's statements would not
ordinarily be considered to present a substantial likelihood of material prejudice,
*and should not in any event be considered prohibited by the general prohibi-
tion of paragraph (a).* Paragraph (b) is not intended to be an exhaustive listing
of the subjects upon which a lawyer may make a statement, but statements on
other matters may be subject to paragraph (a)" (emphasis added).

relieve itself of its responsibility to . . . Converge," filed court papers "that not only misstated the facts, but stated the facts in a way" that supported Costigan's notion of PCG's successor liability in large measure tracks directly the allegations of PCG's complaint. PCG alleges the following:

> "3. Defendants, at various times, defended both Converge and PCG Trading against Costigan's claims — at times blurring the line regarding which client they were representing. . . . *In fact, in attempting to rid themselves of Converge in order to continue representing PCG Trading, defendants filed an unsealed document in the Essex County Superior Court, which contained statements that were later relied upon as evidence by the Norfolk County Superior Court in holding PCG Trading liable for the prior judgments against Converge.* Defendant did not disclose to PCG Trading their prior statements that were adverse to the interests of PCG Trading. . . .

> "25. Nevertheless, defendants filed their withdrawal motion without regard to its potential negative impact on PCG Trading. . . . Defendants were well aware that Converge, Inc. had *insufficient* assets to pay [Costigan's] Wage Judgment.[11] *They also knew that, because PCG Trading had purchased substantially all of Converge, Inc.'s assets, their description of Converge as an insolvent, virtually nonexistent company would (and later did) provide ammunition for Costigan to assert a successor liability claim against PCG Trading.*" (Emphases added.)

As the quoted allegations show, Brewer, in words generally identical to those used in the complaint, summarized in his

---

[11]PCG may have intended to allege that Seyfarth Shaw was "well aware that Converge, Inc. had *sufficient* assets." We raise the point because "sufficient assets" seems more consistent with the position PCG takes in its brief on appeal, as well as the position that Seyfarth Shaw itself took while defending PCG in the Norfolk County action in 2007 — namely, that Converge *did* have more than sufficient assets at the time Seyfarth Shaw filed its motion to withdraw. Neither party has mentioned the quoted allegation from the complaint on appeal. Even assuming no typographical error, for the reasons discussed *infra* in the text, we conclude that the complaint and the papers filed in the Norfolk County action, taken together, furnish Brewer — and by extension, Garner — a safe harbor within the meaning of Mass. R. Prof. C. 3.6 (b) (1) and (2).

comment a primary "claim" (Mass. R. Prof. C. 3.6 [b] [1]) of PCG against Seyfarth Shaw. The substance of the claim is that in filing the motion to withdraw in the Essex County action, the law firm, in a breach of its fiduciary duty to PCG, supplied an important ground for Costigan's subsequent argument that PCG was responsible for the judgments against Converge on a theory of successor liability.

To the extent the complaint itself does not allege that Seyfarth Shaw's motion to withdraw "misstated" facts, the public court filings in the Norfolk County action do reflect the misstatement to which Brewer referred. Those court filings are matters of "public record." Mass. R. Prof. C. 3.6 (b) (2). They reveal that a cornerstone of the defense advanced by Seyfarth Shaw on PCG's behalf in the Norfolk County action was that Converge was not the insolvent shell with no assets that Seyfarth Shaw had described in its Essex County motion to withdraw. Instead, Seyfarth Shaw argued that Converge was a viable corporation with stock holdings worth $6 to $10 million, as well as contract rights and other assets. Placing the conflicting representations in Seyfarth Shaw's Essex County and Norfolk County court filings side by side makes clear that Brewer's statement that Seyfarth Shaw had "[filed court] papers" (the Essex County withdrawal motion) that "misstated the facts" finds support in the public record.[12] We conclude, therefore, that no violation of rule 3.6 has been shown.[13]

It is true that courts have upheld denials of pro hac vice

---

[12]Seyfarth Shaw contends that Brewer's comment about misstating the facts is actually not supported in the complaint or any public record, because all Seyfarth Shaw stated in the Essex County motion to withdraw was that Converge had "no tangible or intangible assets *in Massachusetts,*" and there is no court paper or other public record indicating that this Massachusetts-focused point was a misstatement. The argument puts form over substance. As stated here in the text, the position argued by Seyfarth Shaw on behalf of PCG in the Norfolk County action was that Converge had valuable stock shares that would be available to satisfy Costigan's judgments. Given the nature of these claimed assets, whether they were physically located in Massachusetts seems beside the point. The judge who tried the Norfolk County action concluded the stock in question was not available essentially because it had no external market value, and never discussed its physical location.

[13]In light of our determination that Brewer's statement did not put him in violation of rule 3.6, there is no basis on which to find Garner in derivative violation. PCG argues that even if Brewer's statement were to contravene the

admissions when based on a finding of unethical conduct by the lawyer in question. See, e.g., *Panzardi-Alvarez* v. *United States*, 879 F.2d 975, 981 (1st Cir. 1989), cert. denied, 493 U.S. 1082 (1990), and cases cited (judge did not abuse discretion in denying lawyer's pro hac vice admission given evidence of ethical violations in criminal matter). It is not, however, a proper exercise of discretion to base a denial on a claimed violation of a rule of professional conduct when, in fact, no violation has occurred. See, e.g., *Obert* v. *Republican W. Ins. Co.*, 398 F.3d 138, 143, 147 (1st Cir. 2005) (striking revocation of lawyers' pro hac vice status based in part on violation of local ethical rules, where record did not support such violation). The motion judge erred insofar as she based her denial of the pro hac vice motion on an alleged violation of rule 3.6 by Brewer.

b. *Other grounds for denial of pro hac vice admission.* As an additional or alternate justification for denying Garner's pro hac vice admission, Seyfarth Shaw contends that PCG is adequately represented by local counsel. Although our cases indicate this is a relevant consideration, we have never concluded that this reason alone would be sufficient to support the denial of a motion for admission pro hac vice; rather, it is but one factor to be considered. See *Merles* v. *Lerner*, 391 Mass. at 224 ("Competency of existing counsel is a relevant factor in adjudging pro hac vice motions . . . as an element shaping the judge's discretion in civil cases"); *DiLuzio*, 391 Mass. at 216 ("This element

---

rule, Garner could not be held to account for the statement in light of the fact that Garner alone, and not Brewer, is seeking admission pro hac vice. We disagree. Brewer and Garner are associated with the same firm, and the record indicates both have participated in this litigation. Even if Garner is the only attorney from the firm who files an appearance in the case, Brewer is prohibited from making a statement that, if made by Garner, would be in violation of rule 3.6 (a). See Mass. R. Prof. C. 3.6 (d), 426 Mass. 1392 (1998) ("No lawyer associated in a firm or government agency with a lawyer subject to paragraph [a] shall make a statement prohibited by paragraph [a]"). See 2 G.C. Hazard & W.W. Hodes, The Law of Lawyering § 32.8 (3d ed. Supp. 2011) ("Model Rule 3.6 [d] is a slightly redundant reminder that lawyers may not evade their responsibilities under Rule 3.6 [a] by using a surrogate spokesperson from the same law firm or governmental agency"). It would seem to follow that a judge permissibly could exercise her discretion to deny a motion to admit an attorney pro hac vice based on conduct by another attorney in the firm that contravened rule 3.6 (a). In this case, however, the issue is not presented because Brewer's conduct was not in violation of rule 3.6.

of adequate representation by existing counsel, when combined with the already extended procedural history of this case, may have reasonably prompted the judge to deny the motion"). Accordingly, the rationale for denial of Garner's motion under rule 3.6 having failed, the existence of adequate local representation cannot constitute, by itself, an independent ground to uphold the denial.[14]

3. *Conclusion.* The order denying the motion to admit Robert L. Garner pro hac vice is reversed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[14]PCG also argues it will be prejudiced by the loss of its trial counsel of choice. It appears the motion judge did not consider this point. As a general matter, the prejudice that could result from the denial of pro hac vice admission for a party's counsel of choice is a relevant factor for the judge to consider in ruling on a motion for admission pro hac vice. See *DiLuzio*, 391 Mass. at 215-217.