USCA1 Opinion

 

 December 30, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 93-1585 PENSION ADMINISTRATION COMMITTEE OF THE SHERATON CORPORATION RETIREMENT PLAN FOR SALARIED EMPLOYEES, Plaintiff, Appellee, v. WILLIAM J. CARROLL D/B/A CARROLL CONSULTING ACTUARIES, Defendant, Appellant. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Rya W. Zobel, U.S. District Judge] ___________________ ___________________ Before Breyer, Chief Judge, ___________ Torruella and Selya, Circuit Judges. ______________ ___________________ William J. Carroll on brief pro se. __________________ Jerome P. Facher, Peter A. Spaeth and Hale and Dorr on brief ________________ _______________ _____________ for appellee. __________________ __________________ Per Curiam. This appeal arises from a civil action __________ brought by the named fiduciary of a pension plan to recover certain assets alleged to be wrongfully held by the administrator of another pension plan. The plaintiff is the Pension Administration Committee of the Sheraton Corporation Retirement Plan for Salaried Employees ("the PAC"). The defendant is William J. Carroll d/b/a Carroll Consulting Actuaries (Carroll). Pursuant to Fed. R. Civ. P. 37(b)(2), the district court entered a default judgment against Carroll for his failure to comply with multiple orders compelling discovery. Carroll now appeals from the default judgment. We affirm. Background __________ The PAC commenced this action by filing a five-count complaint which stated claims for relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1001 et. seq., the Declaratory Judgment Act, 28 U.S.C. ___ ____ 2201, federal common law, and state law. The complaint alleged the following facts. PGA Resort Ltd. (PGA), a Florida limited partnership, owned the former Sheraton PGA Resort Hotel in West Palm Beach, Florida. In 1980, PGA began providing retirement benefits for its salaried and hourly employees. PGA provided those benefits by becoming a participating employer in the Pension Plan and Trust for Hotels and Motor Inns Associated -2- With The Sheraton Corporation (Plan I). Under Plan I, individual owners of hotels associated with the Sheraton Corporation (Sheraton) adopted as their pension plans the terms of two "master" documents - a Pension Plan Agreement and a Pension Trust Agreement (the Plan Documents). These documents provided that a participating employer could withdraw from Plan I and establish a separate qualified pension or retirement plan provided that the new plan provided equal or greater rights and benefits to the employees covered by Plan I. Under Plan I, PGA and other participating employers made contributions to a common trust fund which was held by the Bank of Boston as trustee. The Plan Documents further provided that, upon an employer's withdrawal from Plan I, the assets in the participating employer's account in Plan I shall be transferred to the trustee designated by the employer. Carroll is the administrator for Plan I. He has the duty to account separately for the Plan assets of each participating employer and exclusive control over the disposition of Plan I's assets. The complaint alleged that as a result of the following events, Carroll continued improperly to exercise control over the assets in PGA's account in Plan I. In 1986, PGA decided to participate in a new pension plan (Plan II) that preserved the rights and benefits of all -3- PGA employees covered by Plan I, in addition to providing other benefits.1 PGA informed Carroll of its intention to withdraw from Plan I. Carroll informed PGA and its agent, the actuarial firm of Towers, Perrin, Forster & Crosby (TPF&C), that a new pension plan and trust approved by the Internal Revenue Service (IRS) was the only authorization he required to transfer PGA's assets to the trustee of the new pension plan. PGA subsequently adopted Plan II and requested a ruling from the IRS that Plan II was a qualified pension plan under 26 U.S.C. 401(a). The IRS issued such a ruling in 1988. Thereafter, TPF&C instructed Carroll to transfer PGA's assets in Plan I to the Shawmut Bank, the trustee for Plan II. The complaint alleged that despite PGA's compliance with the requirements for transferring the assets set forth in Plan I and Carroll's own conditions, Carroll refused to transfer PGA's assets without justification.2 Effective January 1, 1989, PGA discontinued providing retirement benefits to its employees. Pursuant to an agreement between PGA and Sheraton, the liabilities and assets of Plan II were merged into a third pension plan, the ____________________ 1. Plan II is also known as the Sheraton Salaried and Hourly Retirement Plans and Trusts for Managed Hotels. 2. The complaint further alleged that TPF&C made further demands on Carroll to transfer PGA's assets during the remainder of 1988. Carroll continued to retain control over the assets. In December, 1988, Carroll urged the IRS to rescind its favorable determination letters concerning Plan II. The IRS did not do so. -4- Sheraton Corporation Retirement Plan for Salaried Employees (Plan III). The PAC is the administrator and a named fiduciary of Plan III. See 29 U.S.C. 1102(16)(A), 1102(a). ___ The complaint alleged that at the time this merger took place, PGA's assets in Plan I were the lawful property of Plan II and thus should have been received by Plan III as a result of the merger. However, Carroll improperly continued to refuse to transfer PGA's assets to Plan III despite multiple demands by PGA, its agents, and the PAC. The complaint alleged that PGA's assets in Plan I (hereafter, "the Assets") have been the lawful property of Plan III since January 1, 1989 and that Carroll's improper retention of control over the Assets is in derogation of Plan III's right to possession and control. The PAC commenced this action to compel Carroll to transfer the Assets to Plan III. According to the complaint, Carroll's most recent accounting indicated that the Assets were worth at least $230,000. The first two counts of the complaint alleged that Carroll's improper refusal to transfer the Assets constituted a breach of his fiduciary duty to act solely in the interest of the participants and beneficiaries of Plan I in violation of 29 U.S.C. 1104(a)(1), and a breach of his fiduciary duty to act in accordance with the documents and instruments -5- governing Plan I in violation of 29 U.S.C. 1104(a)(1)(D).3 Carroll's refusal to transfer the Assets also was said to violate of the terms of Plan I. These violations were said to entitle the PAC to an order compelling Carroll to (1) direct the Bank of Boston, the trustee of Plan I, to transfer all assets in PGA's account in Plan I to the trustee for Plan III, Northern Trust Company, and, (2) provide the PAC with a final accounting of the assets in PGA's account in Plan I. The PAC claimed this relief under ERISA's civil enforcement provision, 29 U.S.C. 1132(a)(3).4 Count II sought a ____________________ 3. 29 U.S.C. 1104(a) provides, in relevant part, that: (1) Subject to sections 1103 (c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and * * * (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter. 4. 29 U.S.C. 1132(a) provides that, A civil action may be brought - * * * (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; .... -6- declaratory judgment that the PAC, not Carroll, was entitled to possession and control of the Assets in addition to the aforementioned equitable relief. Counts four and five of the complaint stated common law claims for breach of fiduciary duty and conversion and claimed damages in an amount not less than the market value of the Assets.5 Procedural History __________________ Throughout the course of the proceedings below, Carroll maintained that since the summons and complaint identified him as "William J. Carroll d/b/a Carroll Consulting Actuaries," he had been sued in his individual capacity only, and therefore lacked the ability to respond to the complaint and the PAC's discovery requests in his capacity as the administrator of Plan I. Thus, the PAC filed a request for production of documents shortly after it filed its complaint. That request sought all correspondence, notes and files relating to PGA, its pension plans, or the Assets, as well as all correspondence between Carroll and any other person or entity relating to Carroll's role as the administrator of Plan I. Carroll initially did not file a response to this request for production of documents. Instead, proceeding pro ___ se, he filed an "Objection to Complaint and Motion to Stay __ ____________________ 5. The complaint also claimed attorney's fees and costs under 29 U.S.C. 1132(g). -7- Proceedings." This document alleged, inter alia, that the _____ ____ PAC lacked the standing to bring this action and that Carroll lacked the capacity to defend it since he had been sued only in his individual capacity.6 Carroll withdrew this motion before it was heard. On June 5, 1992, an initial scheduling conference (ISC) was held before the district court. After explaining to Carroll that the PAC was entitled to discover the documents it had requested, the district judge ordered Carroll to produce the requisite documents by June 26, 1992 and to submit to a deposition on August 10th and 11th, 1992. A written order embodying these requirements was issued on June 10, 1992. On June 26, 1992, Carroll filed a response to the PAC's request for production of documents. For the most part, that response denied that Carroll possessed the requested documents in his individual capacity and expressly disavowed the capacity or authority to respond to the PAC's request as the administrator of Plan I.7 On July 2, 1992, the PAC ____________________ 6. We note that attached to this motion were twelve letters and an incomplete list of other documents in Carroll's files. These appear to be responsive to the PAC's request for production of documents, albeit incomplete. 7. Several letters between Carroll and various parties were attached to the response, as well as accountings for the Hourly and Salaried Pension Plans from 1983 through 1990. These documents and those that were attached to his initial objection to the complaint indicate that Carroll's claim that he did not possess the documents is disingenuous. -8- filed a motion to compel production of documents and for sanctions. The motion stated that Carroll had refused to produce documents based on his meritless attempt to distinguish documents he possessed in an individual capacity and documents he possessed in his capacity as administrator of Plan I.8 On August 14, 1992, the district court denied Carroll's motion for disqualification and allowed the PAC's motion to compel production of documents. The court issued an order that required Carroll to produce all documents which he held in his individual or representative capacity.9 By letter dated August 20, 1992, plaintiff's counsel notified Carroll to produce the requisite documents by August 24th and to appear for his deposition on August 28th. Once again, Carroll did not comply. On August 31, 1992, the PAC filed a motion for sanctions based on Carroll's failure to comply with the district court's August 14, 1992 order to produce documents and on his subsequent failure to appear for his deposition on August 28th. The PAC also filed a motion for summary judgment on August 31, 1992. In support of this motion, the PAC filed multiple affidavits, including that of ____________________ 8. Carroll filed a rambling and prolix opposition to the PAC's motion to compel which raised no meritorious issues. He also filed a motion to disqualify the district judge based on her alleged pro-plaintiff bias. 9. Carroll appealed the order denying his motion to disqualify the district judge and the order compelling him to produce the requested documents. This court dismissed both appeals on October 29, 1992. -9- Kathy Bascik, Sheraton's Director of Employee Benefits. Bascik averred that after Plans II and III merged, Plan III began paying claims submitted by the participants and beneficiaries of PGA's pension plans. She further averred that Plan III would continue to pay all valid claims of participants and beneficiaries of PGA's pension plans, although Plan III had been deprived of the assets which correspond to these liabilities as a result of Carroll's refusal to transfer PGA's assets in Plan I. The district court did not rule on the PAC's motion for sanctions while its motion for summary judgment remained under advisement. On November 3, 1992, the district court denied that motion on the ground that genuine issues of material fact remained about the validity of the amendment to Plan I and the validity of Plan II. Thereafter, the PAC resumed its efforts to secure discovery from Carroll. On December 18, 1992, the PAC noticed Carroll's deposition for January 5, 1993. Anticipating that Carroll would not comply on the ground that he could not do so in his individual capacity, plaintiff's counsel subpoenaed Carroll for this deposition in his capacity as the administrator of Plan I. The subpoena also required Carroll to produce the previously requested documents by January 4, 1993. The PAC also requested a ruling on its August 31, 1992 motion for sanctions. On December 29, 1992, Carroll informed -10- plaintiff's counsel that counsel was being engaged to represent Plan I and that he would be unable to comply with the subpoena for his deposition.10 On January 5, 1993, the district court allowed the PAC's motion for sanctions. The court ordered Carroll to pay $2000 to the plaintiff forthwith as partial compensation for the costs it had incurred in its unsuccessful attempts to discover documents and depose him.11 On January 13, 1993, having received no payment from Carroll, the PAC moved to default Carroll pursuant to Fed. R. Civ. P. 37(b) and (d). The motion was based on Carroll's willful refusal to obey the district court's orders to produce documents and submit to a deposition as well as the order compelling Carroll to pay the $2000 sanction for his past misconduct.12 On March 10, 1993, the district court held a hearing on the PAC's motion for a default judgment. Despite Carroll's ____________________ 10. We note that Carroll has proceeded pro se throughout ___ __ this litigation and never secured counsel. 11. On January 25, 1993, Carroll filed a notice of appeal from the sanction order. We dismissed that appeal for lack of jurisdiction on March 17, 1993. 12. On January 18, 1993, Carroll forwarded a $2000 check to the Senior Counsel for ITT Corporation (Sheraton's parent corporation) in New York. While the check was made payable to the PAC, it included a list of conditions seemingly designed to render it non-negotiable. For example, the check indicated that it was good for 30 days only. An accompanying document provided that the PAC's deposit of the check would constitute an admission against its interest. Thus, plaintiff's counsel was unable to use this check. -11- obstinacy, the court deferred ruling on the motion and gave Carroll one last chance. The court ordered Carroll to appear for his deposition on March 15, 1993 and to produce the requested documents at his deposition. In making this ruling, the court explained to Carroll that he was required to appear and answer questions in whatever capacity he thought he was acting with respects to the pension plans. (Supp. App. pp. 255-60). Carroll responded, "I don't know what you mean by me[,]" and repeatedly protested that he was not able to comply with discovery in his capacity as the administrator of Plan I because he had been sued as an individual. The court specifically instructed Carroll to answer "whatever question is put to you" and to "have with you all the documents that pertain to the pension plan. It doesn't matter whether you are William Carroll, personally, William Carroll, trustee, William Carroll, plan administrator, you will appear with all the documents." (Supp. App. pp. 260, 272). When Carroll protested, "I hear the words, but I don't understand the meaning," the court urged him to try, noting that, "[i]f you don't succeed, there will be further sanctions against you Mr. Carroll." (Supp. App. p. 273). The court further ordered Carroll to issue a $2000 check to plaintiff's counsel without restrictions. (Supp. App. p. 278). -12- On March 11, 1993, the district court issued a written order embodying its oral orders from the previous day's hearing. Carroll failed to appear for his deposition and did not pay the $2000 sanction. On March 17, 1993, the PAC filed a renewed motion to default Carroll and for further sanctions. Carroll filed a response in which he indicated that he agreed that a default was "the desired solution of the moment" because he wanted to get this case before another court. The court scheduled a hearing on the renewed motion to default Carroll for April 27, 1992. In response to the hearing notice, Carroll filed another rambling and prolix document generally protesting his treatment in the district court while announcing that he would not be attending the hearing on the default motion. On April 27, 1993, the district court defaulted Carroll under Fed. R. Civ. P. 37. The court specifically found that Carroll willfully and persistently refused to obey the court's orders, including the August 14, 1992 order to produce documents, the March 10- 11, 1993 oral and written orders to appear for his deposition, and the January 5, 1993 sanction order. (Supp. App. pp. 285-86). The court also required plaintiff's counsel to prepare a proposed judgment. On May 5, 1993, the district court entered a judgment against Carroll on counts I through V of the complaint. The judgment declared that the PAC had the right to possession and control of the assets in -13- the account(s) of PGA in Plan I, and ordered Carroll, in whatever capacity necessary, to forthwith direct the First National Bank of Boston (the trustee of Plan I) to transfer all assets in PGA's account(s) in Plan I to the Northern Trust Company, the trustee of Plan III. The judgment also required Carroll to provide plaintiff's counsel with a full and complete accounting of the assets in PGA's account(s) in Plan I and to personally pay plaintiff's costs under 29 U.S.C. 1132(g). (Supp. App. pp. 288-89). Carroll filed a timely notice of appeal.13 Analysis ________ "Federal Rule 37 empowers a district court to make such orders as 'are just' when a party fails to comply with a discovery order, placing the court's handling of such matters beyond appellate review when there has been no abuse of discretion." Local Union No. 251 v. Town Line Sand & Gravel, ___________________ ________________________ Inc., 511 F.2d 1198, 1199 (1st Cir. 1975). On this record, ____ ____________________ 13. Carroll filed a motion for reconsideration before he filed his notice of appeal. The motion did not object to the entry of the default per se. Rather, Carroll sought to revise the substance of the judgment. On June 11, 1993, this court ordered Carroll to show cause why this appeal should not be dismissed for lack of jurisdiction given the outstanding motion for reconsideration. In response, Carroll filed a notice withdrawing his motion for reconsideration with the district court. We allowed this appeal to proceed and directed both parties to brief the jurisdictional issues. Regrettably, neither party has done so. As we conclude that Carroll is not entitled to relief on the merits, we need not address the jurisdictional issues. See Norton v. Mathews, ___ ______ _______ 427 U.S. 524, 530-32 (1976). -14- we have no hesitation in concluding that the district court did not abuse its discretion in defaulting Carroll. In view of Carroll's repeated violations of the court's orders to produce documents and submit to a deposition, not to mention his failure to pay the $2000 sanction, we think that the district court exhibited extraordinary patience. The default judgment was wholly justified. On appeal, Carroll argues that the orders compelling discovery were erroneous because they directed him to provide information in his capacity as the administrator of Plan I when he had only been sued in his individual capacity. Carroll claims that this alleged technical defect in the summons and complaint disabled him from responding to the PAC's discovery efforts. He contends that the default judgment sanctioned him for the conduct of a non-party - i.e. ____ - William J. Carroll, Administrator of Plan I, and therefore is not "just" within the meaning of Fed. R. Civ. P. 37(b)(2). Like the district court, we refuse to indulge in such willful blindness. Carroll concedes that he is the administrator of Plan I and the record discloses that he possesses numerous documents responsive to the PAC's request for production. Carroll's feigned inability to comply is indicative of bad faith, which further justifies the default. See Eisler v. Stritzler, 535 F.2d 148, 153 (1st Cir. ___ ______ _________ -15- 1976)(upholding default judgment where defendant acted in bad faith throughout litigation). Carroll also assails the default judgment under ERISA, raising a host of arguments. He claims that the amendment to Plan I which created Plan II is invalid, thus Plan II never acquired a right to PGA's assets. Carroll further argues that ERISA does not recognize mergers of pension plans, therefore the merger of Plans II and III also is invalid and the PAC has no right to PGA's assets as a result of the merger, apart from the invalidity of Plan II. Carroll also contends that the PAC lacks standing to sue because it is not a "person" and therefore cannot be a fiduciary under 29 U.S.C. 1002(9) and 21(A). Each of these claims have been waived by Carroll's accession to the default. "[A]n entry of default against a defendant establishes the defendant's liability." Goldman, Antonetti, Ferraiuo-Li, Axtmayer & ______________________________________________ Hertell v. Medfit International, Inc., 982 F.2d 686, 693 (1st _______ __________________________ Cir. 1993)(citations omitted). Insofar as these contentions attack the liability finding, they come too late. Carroll's remaining arguments are equally without merit, and largely unintelligible. We particularly note that the district judge did not abuse her discretion in denying Carroll's multiple motions to disqualify her. It is well established that "[p]rior adverse rulings alone cannot, of course, be the basis for a motion to recuse." Panzardi- _________ -16- Alvarez v. United States, 879 F.2d 975, 984 (1st Cir. 1989), _______ _____________ cert. denied, 493 U.S. 1082 (1990). Given Carroll's wholly _____ ______ unjustified refusal to comply with the court's orders, no appearance of bias arises from this record. Judgment affirmed. _________________ -17- -18-