UNITED STATES of America,
Plaintiff/Appellee,

v.

Cuauhtemoc GONZALEZ–LOPEZ, also known as Tomas, Defendant/Appellant.

No. 03–3487.

United States Court of Appeals,
Eighth Circuit.

Submitted: Sept. 16, 2004.

Filed: March 8, 2005.

Karl W. Dickhaus, argued, St. Louis, MO, for appellant.

Assistant U.S. Atty., Tiffany G. Becker, argued, St. Louis, MO, for appellee.

Before WOLLMAN, RICHARD S. ARNOLD,[1] and BYE, Circuit Judges.

BYE, Circuit Judge.

Cuauhtemoc Gonzalez–Lopez was convicted by a jury of conspiring to distribute more than 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 846. On appeal, he argues his conviction should be vacated because the district court violated his Sixth Amendment right to be represented by the counsel of his choice at trial by refusing to grant his attorney's applications for admission pro hac vice. Finding a Sixth Amendment violation, we vacate the conviction and remand the case for a new trial.

I

We begin our discussion with a presentation of the background facts.[2] On January 7, 2003, Gonzalez–Lopez was charged with conspiring to distribute more than 100 kilograms of marijuana in the Eastern District of Missouri. Immediately after the arrest, some of his family members hired Texas attorney John Fahle to represent him on the criminal charges. On January 8, 2003, Fahle appeared at the defendant's detention hearing and arraignment. Shortly after the arraignment, Gonzalez–Lopez telephoned California attorney Joseph Low to discuss the possibili-

1. The Honorable Richard S. Arnold died on September 23, 2004. The case has been decided by the remaining members of the panel pursuant to 28 U.S.C. § 46(d) and 8th Cir. R. 47E.

2. The facts and issues in this case are closely related to those in *Joseph Low, IV v. John Fahle*, 2003 WL 23911038, No. 03–3200 (8th Cir.2005), in which we examine the district court's imposition of sanctions against Joseph Low, Gonzalez–Lopez's attorney of choice.

ty of Low either assisting Fahle or assuming the representation. Apparently he had learned of Low's trial prowess from the defendants in an earlier unrelated drug conspiracy trial in the Eastern District of Missouri. At Gonzalez–Lopez's request, Low met with him at the jail in Farmington, Missouri, between January 8 and 10, 2003. Within ten days of this meeting, Gonzalez–Lopez hired Low.

On March 4, 2003, Low traveled to Missouri to attend an evidentiary hearing in the case conducted by the magistrate judge. Fahle also attended the evidentiary hearing on behalf of Gonzalez–Lopez. As of March 4, 2003, Low had not entered his appearance in the case. The magistrate judge initially accepted Low's provisional entry and permitted Low to participate in the hearing based on Low's assurance he would file a motion for admission pro hac vice. However, during the hearing the magistrate judge rescinded the provisional approval after Low violated the court's rule restricting the cross-examination of a witness to one lawyer by passing notes to Fahle.

Gonzalez–Lopez informed Fahle on March 11, 2003, that he wanted Low to be his sole attorney and asked Fahle to stop representing him. On March 17, 2003, Low filed an application for admission pro hac vice to the Eastern District of Missouri. The district court denied Low's application the next day without providing any oral or written explanation. On April 14, 2003, Low filed a second application for admission pro hac vice. The district court denied the application again without explanation. On April 30, 2003, Low filed a writ of mandamus in our court seeking to compel the district court to grant Low's

motion for admission pro hac vice. The application for a writ was dismissed. Additionally, Low applied by general application for admission to the Eastern District of Missouri, which was not ruled on until after the conclusion of Gonzalez–Lopez's trial.

On April 25, 2003, Fahle filed motions to continue the trial, withdraw as counsel, and for a show cause hearing for sanctions against Low. In the motion for a show cause hearing, Fahle accused Low of violating the rules of professional conduct, specifically Missouri Rule 4–4.2,[3] by communicating with Gonzalez–Lopez about the criminal prosecution without Fahle's permission even though Low knew Fahle represented Gonzalez–Lopez in the matter. At the hearing that day, the court granted Gonzalez–Lopez until May 5, 2003, to retain new counsel and continued the trial setting until July 7, 2003. Gonzalez–Lopez, through Low, retained St. Louis attorney Karl Dickhaus as local counsel for trial. On May 2, 2003, Dickhaus entered his appearance for Gonzalez–Lopez, and the court granted Fahle's motions to continue the trial date and leave to withdraw.

The first time the district court provided Gonzalez–Lopez with an explanation for the denial of Low's applications for admission pro hac vice was on June 3, 2003, in the court's memorandum and order denying Low's motion to strike Fahle's motion for sanctions. In the June 3, 2003, memorandum and order, the district court stated:

In denying [the motions for admission pro hac vice], the Court considered Mr. Low's conduct before the Court in *United States v. Serrano et al.,* 4:01CR450 JCH. The record in that proceeding in-

---

**3.** Rule 4–4.2 states: "In representing a client, a lawyer shall not communicate about the subject of the representation with a party he knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." Mo. Rules of Prof'l Conduct R. 4–4.2.

dicates that Mr. Low contacted a criminal defendant with pre-existing legal representation, interfered with the criminal defendant's representation, and attempted to circumvent the Court's ruling on a continuance of the trial setting. In the same order, the district court noted: "Mr. Low has sought admission into this Court by every means available. He has been denied admission *pro hac vice* because of allegations of ethical improprieties—the very improprieties that are the subject of the motion for sanctions."

On July 7, 2003, the first day of trial, Low again moved for admission and was denied. Dickhaus requested Low be permitted to sit at the table for the defense to assist Dickhaus, who was much less experienced with criminal trials. The district court denied the request, ordered Low to remain in the audience, and forbid Low to have any contact with Dickhaus during the trial proceedings. A United States Marshal sat between Dickhaus and Low during the trial. Gonzalez–Lopez was also unable to meet with Low in the morning before the start of trial, during breaks, during lunch, or after the trial concluded for the day. Low was denied access to the detention facility where Gonzalez–Lopez was housed in the evenings. However, after he complained to the district court about being prohibited from receiving visits from Low in the evenings, the district court ordered the visits to be permitted. He was able to meet with Low on the last night of the trial. The jury found Gonzalez–Lopez guilty of the sole count of the indictment on July 11, 2003.

On August 23, 2003, the district court ruled in favor of Fahle on the motion for sanctions against Low. The court held Low violated Missouri Rule 4–4.2 by communicating with Gonzalez–Lopez about the criminal charges against him without Fahle's permission even though Low knew Fahle represented him. Additionally, in the same memorandum and order, the district court stated it had properly denied Low's motions for admission pro hac vice. The court explained: "These denials were premised on the conduct of Mr. Low that surfaced during the *Serrano* trial, specifically Mr. Low's meeting with represented codefendants without the prior consent of their attorneys."

## II

Gonzalez–Lopez raises several arguments on appeal challenging his conviction and sentence. We address only the primary argument raised by the defendant challenging the district court's denial of admission pro hac vice to the attorney he selected to represent him in the criminal proceeding.

■■■ A non-indigent criminal defendant's Sixth Amendment rights encompass the right to be represented by the attorney selected by the defendant. *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932). As a general rule, " 'defendants are free to employ counsel of their own choice and the courts are afforded little leeway in interfering with that choice.' " *United States v. Lewis,* 759 F.2d 1316, 1326 (8th Cir.1985) (quoting *United States v. Cox,* 580 F.2d 317, 321 (8th Cir. 1978)). "The right to privately retain counsel of choice derives from a defendant's right to determine the type of defense he wishes to present." *United States v. Mendoza–Salgado,* 964 F.2d 993, 1014 (10th Cir.1992) (citations omitted); *United States v. Laura,* 607 F.2d 52, 56 (3d Cir.1979) (citations omitted). "Lawyers are not fungible, and often the most important decision a defendant makes in shaping his defense is his selection of an attorney." *Mendoza–Salgado,* 964 F.2d at

1015–16 (internal quotations and citations omitted). Furthermore, " '[a] defendant's right to the counsel of his choice includes the right to have an out-of-state lawyer admitted *pro hac vice.*' " *United States v. Ries,* 100 F.3d 1469, 1471 (9th Cir.1996) (quoting *United States v. Lillie,* 989 F.2d 1054, 1056 (9th Cir.1993)). Thus, "a decision denying a *pro hac vice* admission necessarily implicates constitutional concerns." *Panzardi–Alvarez v. United States,* 879 F.2d 975, 980 (1st Cir.1989) (citation omitted).

■■■■ "[W]hile an accused who is financially able to retain counsel of his own choosing must not be deprived of a reasonable opportunity to do so, the right to retain counsel of one's choice is not absolute." *United States v. Vallery,* 108 F.3d 155, 157 (8th Cir.1997) (citing *Urquhart v. Lockhart,* 726 F.2d 1316, 1319 (8th Cir. 1984)). "The right to choice of counsel must not obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice." *Id.* (citing *United States v. Gallop,* 838 F.2d 105, 108 (4th Cir.1988)). Thus, the district court must carefully balance the defendant's right to be represented by the counsel of his choice against the court's interest in " 'the orderly administration of justice.' " *Urquhart,* 726 F.2d at 1319 (quoting *Linton v. Perini,* 656 F.2d 207, 209 (6th Cir.1981)). This issue typically arises when a criminal defendant seeks to substitute counsel shortly before trial or during the trial. *Panzardi–Alvarez,* 879 F.2d at 980 (citations omitted). "It is also appropriate, however, for the court to consider the effect of the attorney's past actions (especially past ethical violations) on the administration of justice within the court." *Id.*

■■■ It is the government's position that we should defer to the district court's deci-sion to deny Low admission pro hac vice because the district court judge in the instant case also presided over the *Serrano* case and was therefore in the better position to observe Low's conduct in that case. We disagree. It is clear from the record the district court's decision to deny Low admission pro hac vice was based on conduct occurring outside the presence of the judge, namely Low's communication with represented parties. *See United States v. Collins,* 920 F.2d 619, 628 (10th Cir.1990) (revocation of attorney's admission pro hac vice reviewed de novo where attorney was disqualified based on pleadings not conduct in open court). Furthermore, the record reflects the district court's decision to deny Low's applications for admission pro hac vice turned on the district court's interpretation of the law. We therefore review the issues in this case de novo. *See Emery v. Hunt,* 272 F.3d 1042, 1046 (8th Cir.2001) (stating "even under the abuse of discretion standard, a district court's rulings on issues of law are reviewed de novo") (citation omitted); *Lamb Eng'g & Const. Co. v. Neb. Pub. Power Dist.,* 103 F.3d 1422, 1434 (8th Cir. 1997) (citation omitted).

■■■ We also reject the government's suggestion that the district court was not required to provide an explanation for denying Low's application for admission pro hac vice. A district court which denies an application for admission pro hac vice submitted by the attorney for a criminal defendant must articulate the reason for the denial "for the benefit of the defendant and the reviewing court." *Ries,* 100 F.3d at 1472; *Collins,* 920 F.2d at 628 (citing *Laura,* 607 F.2d at 60). The district court denied Low's applications for admission pro hac vice on March 18, 2003, and April 14, 2003, without providing written or oral

explanation.[4] However, the district court provided its explanation for denying Low's applications for admission pro hac vice in two subsequent orders relating to the motion for sanctions against Low.

 The first time the district court provided an explanation for denying Low's applications was in the court's June 3, 2003, memorandum and order in which the court denied Low's motion to strike Fahle's motion for sanctions against Low. In the background section of the June 3, 2003, order, the court explained it had denied Low's application for admission pro hac vice because of Low's conduct in the *Serrano* case. According to the court, "[t]he record in that proceeding indicates that Mr. Low contacted a criminal defendant with pre-existing legal representation, interfered with the criminal defendant's representation, and attempted to circumvent the Court's ruling on a continuance of the trial setting." The court also noted in the order: "[Mr. Low] has been denied admission *pro hac vice* because of allegations of ethical improprieties—the very improprieties that are the subject of the motion for sanctions." The court provided no further explanation or details.

The district court provided a more detailed explanation for denying Low's applications in the court's August 23, 2003, memorandum and order ruling on the motion for sanctions against Low. The order provided the following description of Low's conduct in the *Serrano* case which the court found to violate Rule 4–4.2:

> The transcript of the January 6, 2003 pre-tr[ia]l motions hearing in *United*

States v. Serrano et al.* establishes that on January 2, 2003 Mr. Low and Mr. Alarid met with the criminal Defendants Jose Serrano, Francisco Serrano, Eduardo Serrano, and Raymundo Aguilar Sanchez, as a group in the Francois County jail. At this time Francisco Serrano was represented by Grant Shostak; Eduardo Serrano was represented by Scott Furstman; and Raymundo Aguilar Sanchez was represented by Raymond Bolourtchi. None of these attorneys was present for the meetings between the Defendants and Mr. Low and Mr. Alarid, and Mr. Shostak and Mr. Bolourtchi testified that they did not give these attorneys permission to meet with their clients. Moreover, Mr. Low and Mr. Alarid did not notify Mr. Shostak and Mr. Bolourtchi that they were meeting with their clients.

There is no suggestion in the court's order that Low was representing any other party in the case when he communicated with the defendants on January 2, 2003. The court concluded: "After its experience with Mr. Low in *United States v. Serrano et al.*, specifically with respect to his contact with represented parties, the Court properly exercised its discretion in denying Mr. Low *pro hac vice* status in *United States v. Cuauhtemoc Gonzalez–Lopez.*"

Also in the August 23, 2003, memorandum and order, the court held Low violated Missouri Rule 4–4.2 by communicating with Gonzalez–Lopez without Fahle's permission. There is similarly no indication in the court's order that Low was representing any other party in the case when he spoke with Gonzalez–Lopez about the

---

**4.** Relying on Eleventh Circuit and Fifth Circuit case law, Gonzalez–Lopez argues the district court was required to hold an evidentiary hearing before denying Low admission pro hac vice and the district court should not be able to deny an attorney admission pro hac vice unless the attorney engages in unethical conduct sufficient to warrant disbarment. *See Schlumberger Techs., Inc. v. Wiley,* 113 F.3d 1553, 1159 (11th Cir.1997); *In re Evans,* 524 F.2d 1004, 1007–08 (5th Cir.1975). The Eighth Circuit has not adopted a similar rule, and we decline to adopt such a rule at this time.

possibility of becoming his lawyer. The district court stated that, in deciding to impose sanctions against Low for communicating with Gonzalez–Lopez, the court considered testimony concerning Low's conduct of contacting represented parties in the *Serrano* case, noting the "inextricable nature of the two cases."

It is clear from the record in this case the district court denied Gonzalez–Lopez's attorney's application for pro hac vice admission because the court believed Low violated Rule 4.4–2 when Low communicated with the represented defendants in the *Serrano* case without obtaining permission from the attorneys who represented them at the time. It is also clear from the record the court did not consider or find relevant whether Low was representing any other party in the case when he communicated with the *Serrano* defendants about their case. The district court interprets Rule 4–4.2 to prohibit any attorney from speaking to any party represented by counsel in a matter about that matter without permission from the party's attorney even if the attorney is not representing any other party in the case.

 The government argues the district court's interpretation of Missouri Rule 4–4.2 is correct. As we discuss in our opinion in the companion case, *Joseph Low, IV v. John Fahle*, 2003 WL 23911038, No. 03–3200 (8th Cir.2005), the district court's interpretation of Rule 4–4.2 is not correct. Rule 4–4.2 states: "In representing a client, a lawyer shall not communicate about the subject of the representation with a party he knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." Mo. Rules of Prof'l Conduct R. 4–4.2. Under the district court's interpretation of Rule 4–4.2, an attorney with no involvement in a case is prohibited from speaking to represented parties in a case about the case without the permission of preexisting counsel. This interpretation effectively reads the words "In representing a client" out of the Rule. It is also not supported by the purpose of the Rule, which is to protect represented parties from overreaching by the attorneys representing other parties in the matter.

Furthermore, the district court's interpretation of Rule 4–4.2 would unjustifiably prevent parties in a litigation from consulting with other attorneys to obtain alternative advice, hire additional counsel, or hire different counsel. This is particularly problematic in the context of criminal cases in which defendants have a Sixth Amendment right to be represented by the attorney they select. For example, in the present case, immediately after Gonzalez–Lopez was charged with conspiring to distribute marijuana on January 7, 2003, his family retained Fahle to represent him. Fahle appeared on Gonzalez–Lopez's behalf at the hearing and arraignment which was held the very next day. Understandably, after being charged with the criminal complaint on January 7 and prior to the arraignment on January 8, Gonzalez–Lopez may not have had a chance to select an attorney. Soon after the arraignment, he did contact California attorney Joseph Low, whom he had heard favorable things about and whom he was interested in hiring to represent him either in place of Fahle or in addition to Fahle. Prior to receiving Gonzalez–Lopez's call, Low had no involvement in the criminal case. Between January 8 and 10, 2003, they met at Gonzalez–Lopez's request, and within ten days he selected Low to represent him in the criminal proceeding. Under the district court's interpretation of Rule 4–4.2, after January 8, 2003, no other attorney was allowed to speak with Gonzalez–Lopez about the case without Fahle's permission.

We are further troubled by the fact that in the two district court orders discussing the denial of Low's application for admission pro hac vice there is no mention of the effect of the denial on Gonzalez–Lopez's Sixth Amendment right to representation by counsel of his choice. Instead, the court's discussions of its reason for denying Low's applications address the effect of the denial on Low's rights only. In the June 3, 2003, order, when the district court provided its reasons for denying Low's application, the district court noted its " 'power to control admission to its bar,' " but did not mention Gonzalez–Lopez's Sixth Amendment right to choice of counsel. In the August 23, 2003, order, the court discussed and rejected Low's argument that due process entitled Low to a hearing before the court denied him pro hac vice admission. While an attorney's past ethical violations may affect the administration of justice within the court and therefore outweigh the Sixth Amendment presumption in favor of the defendant's counsel of choice, it is clear from the record Gonzalez–Lopez's Sixth Amendment right played no part in the district court's decision to deny Low pro hac vice admission.

We conclude the district court erred in denying Low's application for admission pro hac vice.

### III

■ Next, we consider whether the deprivation of the right to counsel of choice is subject to harmless error review. It is well established most constitutional errors in criminal trials do not require automatic reversal of the conviction. *Neder v. United States*, 527 U.S. 1, 7–8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). In *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court held "there may be some

constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring automatic reversal of the conviction." In *Arizona v. Fulminante*, 499 U.S. 279, 306–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), the Supreme Court held constitutional errors occurring in a criminal proceeding fall into one of two categories: "trial errors" or errors reflecting "structural defects." "Trial error 'occur[s] during the presentation of the case to the jury,' and is amenable to harmless-error analysis because it 'may ... be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial].' " *Brecht v. Abrahamson*, 507 U.S. 619, 629, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Fulminante*, 499 U.S. at 307–08, 111 S.Ct. 1246). In such cases, the conviction will not be reversed if the government can demonstrate " 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (quoting *Chapman*, 386 U.S. at 24, 87 S.Ct. 824).

■ The second category consists of "a limited class of fundamental constitutional errors that 'defy analysis by "harmless error" standards.' " *Neder*, 527 U.S. at 7, 119 S.Ct. 1827 (quoting *Fulminante*, 499 U.S. at 309, 111 S.Ct. 1246). These constitutional errors "are so intrinsically harmful as to require automatic reversal (*i.e.*, 'affect substantial rights') without regard to their effect on the outcome." *Id.* In these cases, the error causes a " 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.' " *Id.* at 8, 119 S.Ct. 1827 (quoting *Fulminante*, 499 U.S. at 310, 111 S.Ct. 1246). The Supreme Court has

not decided whether harmless error review applies to the denial of the Sixth Amendment right to be represented by the attorney chosen by the defendant. In *Flanagan v. United States,* 465 U.S. 259, 268, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), however, the Court hinted that the denial of the right to counsel of choice may result in automatic reversal by comparing the right to rights which if violated result in automatic reversal.

The Eighth Circuit has never directly decided this issue. In *Lewis,* we considered the issue of "whether a solvent defendant who is denied chosen counsel and who is not impeding the administration of justice, must show prejudice from this denial in order to obtain relief." 759 F.2d at 1326. Noting the Ninth Circuit to be the only court to have addressed the issue at that time, we found "merit" in the Ninth Circuit's view that denial of the right does not require a showing of prejudice for reversal. *Id.* at 1326–27 (citing *United States v. Ray,* 731 F.2d 1361, 1365 (9th Cir.1984)). We did not decide the issue in *Lewis* because we found the defendant in that case failed to request alternate counsel and was therefore not denied his right to counsel of choice. *Id.* at 1327. Additionally, in *United States v. Villegas,* an unpublished per curiam opinion, we noted in dicta that a violation of the right to choice of counsel does not require a demonstration of prejudice. 8 Fed. Appx. 597, 598 (8th Cir.2001) (unpublished per curiam) (citing *Lewis,* 759 F.2d at 1326–27).

We recognize that nearly all the circuit courts to address this issue have held a criminal defendant who is denied the Sixth Amendment right to be represented by his chosen attorney does not have to demonstrate prejudice to obtain reversal of the conviction. *See United States v. Voigt,* 89 F.3d 1050, 1074 (3d Cir.1996); *United States v. Childress,* 58 F.3d 693, 736 (D.C.Cir.1995) (per curiam); *Bland v. California,* 20 F.3d 1469, 1478 (9th Cir.1994), *overruled on other grounds by Schell v. Witek,* 218 F.3d 1017 (9th Cir.2000); *United States v. Mendoza–Salgado,* 964 F.2d 993, 1015–16 (10th Cir.1992); *United States v. Panzardi Alvarez,* 816 F.2d 813, 818 (1st Cir.1987); *Wilson v. Mintzes,* 761 F.2d 275, 285–86 (6th Cir.1985). *But see Rodriguez v. Chandler,* 382 F.3d 670, 675 (7th Cir.2004) (adopting a middle-ground "adverse effect" standard); *United States v. Walters,* 309 F.3d 589, 593 (9th Cir.2002) (holding harmless error review applies to denial of counsel of choice at sentencing phase only because denial was not a complete denial of counsel of choice).

■ We join the majority of circuit courts and hold the denial of a criminal defendant's Sixth Amendment right to be represented by the attorney he selected results in automatic reversal of the conviction.

The denial of the right to counsel of one's choice does not fit in the category of cases reflecting a "trial error" which takes place "during the presentation of evidence to the jury" and can therefore be "quantitatively assessed in the context of other evidence presented." *See, e.g., Neder,* 527 U.S. at 8–9, 119 S.Ct. 1827 (omission of element of offense in jury instruction subject to harmless error review); *Fulminante,* 499 U.S. at 306–07, 111 S.Ct. 1246 (listing, among other examples, the following "trial errors" subject to harmless error review: *Carella v. California,* 491 U.S. 263, 266, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (erroneous conclusive presumption in jury instruction); *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (erroneous rebuttable presumption in jury instruction); *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (improper restriction on defendant's right to cross-examine wit-

ness for bias); *United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (improper comment at trial about defendant's silence); *Moore v. Illinois,* 434 U.S. 220, 232, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977) (erroneous admission of identification evidence); *Brown v. United States,* 411 U.S. 223, 231–32, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) (improper admission of non-testifying co-defendant's out-of-court statement)).

Instead, the denial of the right to counsel of choice clearly belongs in the class of fundamental constitutional errors which reflect a defect in the framework of the trial mechanism and "defy analysis by 'harmless error standards.'" *Fulminante,* 499 U.S. at 309, 111 S.Ct. 1246. In *Fulminante,* the Supreme Court described this class of fundamental constitutional errors as follows:

> One of those violations, involved in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), was the total deprivation of the right to counsel at trial. The other violation, involved in *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), was a judge who was not impartial. These are structural defects in the constitution of the trial mechanism, which defy analysis by "harmless-error" standards. The entire conduct of the trial from beginning to end is obviously affected by the absence of counsel for a criminal defendant, just as it is by the presence on the bench of a judge who is not impartial. Since our decision in *Chapman,* other cases have added to the category of constitutional errors which are not subject to harmless error the following: unlawful exclusion of members of the defendant's race from a grand jury, *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); the right to self-representation at trial, *McKaskle v. Wiggins,* 465 U.S. 168, 177–78 n. 8, 104 S.Ct. 944, 79

L.Ed.2d 122 (1984); and the right to public trial, *Waller v. Georgia,* 467 U.S. 39, 49 n. 9, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). Each of these constitutional deprivations is a similar structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.

*Fulminante,* 499 U.S. at 309–10, 111 S.Ct. 1246; *see also Sullivan,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (deficient reasonable doubt jury instruction is structural error which defies harmless error review).

Like the denial of the right to self-representation and the denial of the right to counsel, the denial of the right to be represented by one's selected attorney "infects the entire trial process" from "beginning to end." As the Third Circuit recognized in *United States v. Laura:* "Attorneys are not fungible." 607 F.2d at 56. Within the range of effective advocacy, attorneys will differ as to their trial strategy, oratory style, and the importance they place on certain legal issues. *Id.* They may also differ with respect to expertise in certain areas of law, and experience or familiarity with opposing counsel and the judge. These differences will impact a trial in every way the presence or absence of counsel impacts a trial.

Moreover, like the denial of the right to self-representation, the unwarranted denial of the right to choice of counsel can "never be harmless." Both rights "reflect[ ] constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding." *Flanagan,* 465 U.S. at 268, 104 S.Ct. 1051 (citing *McKaskle,* 465 U.S. at 177 n. 8, 104 S.Ct. 944); *see Panzardi Alvarez,* 816 F.2d at 818; *Wilson,* 761 F.2d at 286. The criminal defendant's right to select the attorney of his choice to represent him, like the right to self-representa-

tion, derives from the Sixth Amendment principle wherein the defendant has the right to decide the type of defense he will mount. *See Laura,* 607 F.2d at 56 (citations omitted); *Collins,* 920 F.2d at 625 (citation omitted). "The Sixth Amendment ... grants to the accused personally the right to make his defense .... for it is he who suffers the consequences if the defense fails." *Faretta v. California,* 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (footnote omitted). As several courts have recognized, "the most important decision a defendant makes in shaping his defense is his selection of an attorney." *Laura,* 607 F.2d at 56; *accord Collins,* 920 F.2d at 625.

Not only does the selection of an attorney demark the sphere of defense strategies a defendant will have presented to him; with his selection he may also give his attorney the authority to make decisions for him. For once a lawyer has been selected 'law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas.'

*Laura,* 607 F.2d at 56 (quoting *Faretta,* 422 U.S. at 820, 95 S.Ct. 2525).

Finally, as other courts have pointed out, harmless error analysis is not amenable to the denial of the right to counsel of choice. Requiring a criminal defendant to demonstrate prejudice from the denial of the right to be represented by his chosen counsel would essentially require the defendant to demonstrate the attorney who represented him at trial rendered deficient assistance, the same showing the defendant would have to make in asserting a claim that he was denied the right to the effective assistance of counsel. Thus, applying harmless error analysis to the denial of the right to counsel of choice would effectively "obliterate" the criminal defendant's Sixth Amendment right to be repre-

sented by counsel of his choice, a right the Supreme Court recognized in *Wheat,* by collapsing the right to counsel of choice into the right to receive effective assistance of counsel at trial. *Wilson,* 761 F.2d at 286; *Fuller v. Diesslin,* 868 F.2d 604, 610 (3d Cir.1989).

## IV

We vacate the entry of judgment of conviction against Gonzalez–Lopez and remand the case for a new trial.