STATE of Missouri, Respondent,

v.

Jerry BECK, Appellant.

No. ED 97205.

Missouri Court of Appeals,
Eastern District,
Division Five.

Oct. 23, 2012.

Ellen H. Flottman, Columbia, MO, for appellant.

Chris Koster, Attorney General, Timothy A. Blackwell, Asst. Atty. Gen., Jefferson City, MO, for respondent.

ROBERT M. CLAYTON III, Judge.

Jerry Beck ("Beck") appeals from the judgment entered upon a jury's verdict convicting him of two counts of statutory sodomy in the first degree, one count of sexual exploitation of a minor, two counts of forcible sodomy, one count of victim tampering, one count of armed criminal action, and one count of attempted victim tampering. On appeal he asserts the trial court erred in disqualifying his counsel of choice. We affirm.

## I. BACKGROUND

Beck was charged with multiple counts of sodomy, sexual exploitation, furnishing pornographic materials to a minor, victim tampering, and armed criminal action. In January 2010, Frank Carlson ("Carlson") entered his appearance as counsel for Beck. A trial was set by agreement of the parties for September 14 through 16, 2010.

On August 31, 2010, Carlson filed a motion to continue the trial. He asserted that while he had received "some funds," it was not sufficient to take depositions or otherwise prepare for trial. After a hearing, the court denied the motion. On September 9, Carlson sent a letter informing the court that if the case were called for trial as scheduled he would announce "not ready" and would not participate in the trial, which would deny Beck the right to effective assistance of counsel and other trial rights. Carlson noted his nonparticipation would cause the case to be "tried twice."

On September 13, 2010, the day before trial, the court held a hearing on the State's motion to allow hearsay testimony of child witnesses. Carlson appeared but declined to participate. The court went forward with the hearing, during which the State questioned S.W. and L.W. Carlson did not cross-examine the witnesses. Following the hearing, the trial court questioned Carlson about his readiness for trial. Carlson asserted he had been unable to conduct depositions[1] due to lack of payment.

The court noted that Carlson had known of the September trial date since March 2010, but had not done any preparation for trial during that period and had not made the court aware of any difficulties with trial preparation until August 31, only two weeks before trial. The court characterized Carlson's actions as "not diligent representation of [his] client." The court further queried if Carlson was admitting he had not competently represented Beck because he had not been paid, and Carlson responded that he "ha[d] not been able, your honor, to adequately prepare [Beck's] defense."

Carlson moved to withdraw as counsel for Beck. Beck agreed he was asking Carlson to withdraw and stated he had not known until the Friday before trial that Carlson would not participate in the trial. The court granted Carlson's motion to withdraw but indicated its intent to file a complaint with the bar disciplinary committee, asserting that Carlson's actions were not in the best interest of the court and that he had engaged in conduct that was prejudicial to the administration of justice. The court continued the trial setting to allow Beck to find new counsel.

After the court granted Carlson's withdrawal, Beck's son approached the bench and informed the court that his family had paid Carlson $12,000 to represent Beck. Carlson agreed the family had paid him approximately that amount, but stated it was "[a]bsolutely not" sufficient. Despite his withdrawal, Carlson indicated he would like to stay on the case and be allowed time to prepare. The court noted that Carlson "ha[d] had twelve thousand dollars and nine months" to prepare, and stated that it "would be loath to allow Mr. Carlson to stay on this case and take it to trial some other time."

On October 6, 2010, Carlson again entered an appearance and filed a notice to take depositions. The State filed a motion to disqualify Carlson. The court scheduled a hearing on the motion for November 18, but Carlson failed to appear. After a rescheduled hearing, at which Carlson appeared, the trial court granted the State's motion to disqualify Carlson.

The case proceeded to trial at which Beck was represented by private counsel.[2] A jury found Beck guilty of two counts of statutory sodomy in the first degree, one count of sexual exploitation, two counts of forcible sodomy, two counts of attempted victim tampering, and armed criminal action. The trial court sentenced Beck to a total of two consecutive sentences of life

---

1. Carlson stated specifically that it was necessary for him to depose the investigating officers, the victims, and S.W. and L.W. The court pointed out that Carlson had just had an opportunity to question S.W. and L.W. on cross-examination but refused.

2. Initially after Carlson was granted leave to withdraw, the court informed Beck he would be assigned a public defender. However, after it was discovered Beck had $12,000 to pay Carlson, the court noted Beck might not qualify for a public defender, but still encouraged him to apply. The record is silent as to whether Beck applied for a public defender, and he secured private counsel for his eventual trial.

imprisonment. This appeal follows, *in forma pauperis.*

## II. DISCUSSION

In his sole point on appeal, Beck argues the trial court erred in disqualifying Carlson as his counsel of choice upon the State's motion. Beck claims the trial court violated his right to counsel of choice as guaranteed by the Sixth Amendment, applied to the States through the Fourteenth Amendment, because the stated ground for removal, Carlson's threat of nonparticipation, was no longer at issue. We disagree.

### A. Standard of Review

■ The disqualification of counsel lies within the sound discretion of trial court. *State ex rel. Horn v. Ray,* 325 S.W.3d 500, 504 (Mo.App. E.D.2010). We will find an abuse of discretion where the trial court's ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *In re Contest of Primary Election Candidacy of Fletcher,* 337 S.W.3d 137, 146 (Mo.App. W.D.2011).

### B. Disqualification of Frank Carlson

■ The Sixth Amendment guarantees criminal defendants the right to assistance of counsel for their defense. Included in this guarantee is "the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez–Lopez,* 548 U.S. 140, 144, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). The right to choice of counsel

derives from a defendant's right to determine what type of defense he wishes to present, recognizing that attorneys are not interchangeable and have substantial influence in shaping a defense. *United States v. Gonzalez–Lopez,* 399 F.3d 924, 928 (8th Cir.2005), *aff'd,* 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006); *United States v. Mendoza–Salgado,* 964 F.2d 993, 1014–16 (10th Cir.1992). Accordingly, courts are afforded little leeway in interfering with this choice. *Id.*

■ This right to choice of counsel, however, is not absolute. *Howell v. State,* 357 S.W.3d 236, 240 (Mo.App. W.D.2012). The Sixth Amendment's concern is to ensure a defendant's right to a fair trial by securing "an effective advocate ... rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). The United States Supreme Court has recognized that courts may limit a defendant's right to choice of counsel based on certain factors, such as the attorney's eligibility to practice in the jurisdiction, any potential conflict of interest, and case-management considerations. *Gonzalez–Lopez,* 548 U.S. at 151–52, 126 S.Ct. 2557.[3] Moreover, courts have "an 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" *Id.* (quoting *Wheat,* 486 U.S. at 160, 108 S.Ct. 1692). Likewise, Missouri courts have also held that "courts have not only the duty to dispense justice, but the

---

3. In addition, several courts have noted that defendants are not entitled to a particular attorney whom they cannot afford. *See e.g., United States v. Gonzalez–Lopez,* 548 U.S. 140, 144, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006); *Howell v. State,* 357 S.W.3d 236, 241 (Mo.

App. W.D.2012). However, we note that in the instant case, at the time of the disqualification, Beck had secured the necessary funds to pay Carlson; thus, whether Beck was entitled to representation from Carlson *vis à vis* cost is not at issue here.

46

equally important duty to maintain the integrity of the judicial system." *State ex rel. Horn,* 325 S.W.3d at 511. Accordingly, Missouri courts have the power to do what is reasonably necessary for the administration of justice, including disqualifying an attorney. *Id.*

In determining whether to disqualify an attorney, courts may consider whether the action of the attorney "constitutes a breach of professional ethics and invites disrespect of the integrity of the court." *See Wheat,* 486 U.S. at 162, 108 S.Ct. 1692 (quoting *United States v. Dolan,* 570 F.2d 1177, 1184 (3rd Cir.1978)). It is also appropriate for courts to consider the effect of the attorney's past actions and ethical violations on the administration of justice within the court. *See Gonzalez–Lopez,* 399 F.3d at 929; *Panzardi-Alvarez v. United States,* 879 F.2d 975, 980–82 (1st Cir.1989) (judge denied defendant's counsel of choice when there was evidence of past ethical violations, by denying request for *pro hoc vice* ). However, the violation of a professional ethical rule does not necessarily warrant disqualification of a lawyer in pending litigation. Missouri Rules of Prof'l Conduct R. 4, Preamble [20] (2012). Instead, the court should balance its interests in maintaining ethics and integrity against its concern in avoiding the use of the professional rules as a procedural weapon. *Id.* ("the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons"); *see also Smith v. Kansas City S. Ry. Co.,* 87 S.W.3d 266, 276 n. 8 (Mo.App. W.D.2002) (purpose of canons of ethics is to regulate conduct of counsel, not to be used as weapon against attorney's client).

Reviewing the record here, we find the trial court based its decision on how Carlson's actions would affect Beck's Sixth Amendment rights to a fair trial and the integrity of the judicial system, and did not allow the State to use the disqualification as a procedural weapon.

The court had characterized, on the record, Carlson's representation of Beck "not diligent [in the] representation of [his] client," and indicated Carlson had not competently represented Beck. Moreover, the court had indicated its intention to file a bar complaint against Carlson based on his actions in representing Beck. With this history, any future representation of Beck by Carlson would be tainted by the allegations of lack of diligence and lack of competence. *See Gonzalez–Lopez,* 399 F.3d at 929; *Panzardi-Alvarez,* 879 F.2d at 980–82 (court may consider how attorney's past actions and ethical violations would effect administration of justice). For the court, after expressing these serious reservations, to then allow Carlson to reenter his appearance and represent Beck at trial would call into question the fairness of Beck's trial, and thus the integrity of the judicial system in allowing the questionable representation to occur. *Gonzalez–Lopez,* 548 U.S. at 152, 126 S.Ct. 2557; *State ex rel. Horn,* 325 S.W.3d at 511.

Further, a court may, in its discretion, disqualify attorneys for case-management considerations. *Gonzalez–Lopez,* 548 U.S. at 152, 126 S.Ct. 2557. Courts have "wide latitude" in balancing a defendant's right to choice of counsel against the needs of its calendar, fairness to all parties, and the parties' and the public's interest in the efficient administration of justice. *Id.; Howell,* 357 S.W.3d at 240 & n. 1 (citing *Urquhart v. Lockhart,* 726 F.2d 1316, 1319 (8th Cir.1984)). Although Beck asserts on appeal that Carlson was no longer threatening nonpartici-

pation at the disqualification hearing, the record demonstrates that it was reasonable for the court to not accept counsel's assurances of preparedness and diligence.[4] Again, it is appropriate for a court to consider an attorney's past actions. *See Gonzalez–Lopez*, 399 F.3d at 929; *Panzardi-Alvarez*, 879 F.2d at 980–82.

Carlson's actions had already caused substantial delays, both frustrating the court and causing additional pain to the victims.[5] Carlson had known of the case setting since March but was unprepared to proceed in September, having conducted no depositions despite receiving $12,000 in fees. Moreover, while Carlson argued he could not proceed to trial before deposing the investigating officers, the victims, and S.W. and L.W., Carlson had been given the opportunity to question S.W. and L.W. on cross-examination during the pre-trial hearing but he had refused to participate. As well, Carlson further delayed the process of justice by failing to appear at the first motion to disqualify.

In light of our standard of review, we cannot say the court abused its discretion in granting the State's motion to disqualify Carlson as attorney for Beck. Beck does not otherwise challenge the merits of his conviction.

Point one on appeal is denied.

---

4.  We further note that Carlson's actions before the trial court indicated a lack of respect both for the judicial system and for his obligation of candor to the tribunal. Carlson led the court to believe, as grounds for his failure to prepare, he had paid only minimally—and even twice stating Beck had been "unable" to pay him—when he had in fact received $12,000 in fees. In addition, after the trial court denied Carlson's motion for continuance, he moved to withdraw, thus forcing the court to continue the trial to allow Beck to find counsel, and then filed his reentry shortly after obtaining the continuance.

## III. CONCLUSION

The judgment and sentence of the trial court is affirmed.

GARY M. GAERTNER, JR., C.J., and LAWRENCE E. MOONEY, J., concur.

---

5.  After Carlson moved to withdraw, the mothers of the minor victims requested the court not continue the case, stating that the case had been pending for over a year and the girls could not move on with their lives with the trial hanging over their heads, and that it was difficult for the girls to have to discuss the events repeatedly. Nevertheless, because Carlson refused to participate in the trial, the court was left with no choice but to allow him to withdraw and continue the case for Beck to arrange for representation.